391 A.2d 1296

COMMONWEALTH of Pennsylvania, Appellee,

v.

Vincent T. CHARLETT, a/k/a Rick Pertrini, a/k/a Rev. Calvenger, a/k/a Rev. McCallister, Vincent T. Charlett, t/d/b/a Laurel, Vincent T. Charlett, t/d/b/a Burgandy U., and Linda Hoffman, Appellants.

Supreme Court of Pennsylvania.

Argued March 13, 1978.

Decided Oct. 5, 1978.

24

Allen N. Brunwasser, Pittsburgh, for appellants.

Albert Gaudio, Asst. Dist. Atty., Greensburg, for appellee.

Before O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

OPINION

MANDERINO, Justice.

On February 25, 1975, the District Attorney's Office of Westmoreland County filed a complaint in equity seeking to enjoin appellants from operating a business known as "Laurel" or "Burgandy U." The complaint alleged that Burgandy U. was a public nuisance because illegal sexual activities were performed there under the guise of operating as a massage parlor. Burgandy U., the complaint alleged, was a nuisance detrimental to the health, safety, welfare and morals of the community.

After a hearing, the Court of Common Pleas of Westmoreland County found that the performance of massage was a mere subterfuge at Burgandy U.; that female "inmates" employed there by appellants engaged in sexual intercourse with patrons; that these inmates performed other acts upon patrons intended to induce sexual pleasure and/or sexual climax; and that the operation of Burgandy U., owned by appellant Vincent Charlett and managed by appellant Linda Hoffman, was a hazard to the health, decency and morals of

the citizens of Westmoreland County. The court's conclusions of law were that Burgandy U., was (1) a public nuisance and (2) in violation of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 5902 (1973). The court entered the following order:

"AND NOW, this 13th day of May, 1975, after hearing, arguments and careful review of briefs and cases submitted for consideration, all of the above-captioned defendants, their agents, servants, employees or representatives are hereby preliminarily enjoined and prohibited from continuing or conducting any business in Westmoreland County, Pennsylvania wherein customers or patrons, for hire, are shown or exhibited genitals or other portions of an inmate's or employee's body with the intent or objective to induce or stimulate sexual excitement, sexual enjoyment or sexual climax; and the aforesaid are further preliminarily enjoined and prohibited from offering for hire or from performing for hire any body contact directly or indirectly upon a patron or customer where such body contact is designed or intended to induce or stimulate sexual excitement, sexual enjoyment or sexual climax.

On June 9, 1975, the Westmoreland County District Attorney filed a petition for contempt citation, alleging that appellants had violated the above order. A rule to show cause why a contempt citation should not issue was granted, and hearings on the rule were held. During the hearings, defense counsel requested that the court inform appellants whether the proceeding was one for criminal contempt or civil contempt. The court refused to classify the proceeding, and at the conclusion of the hearings, found that appellants had knowingly violated its May 13th order by continuing to provide sexual services to customers of Burgandy U. in exchange for monetary fees, and that such willful violation of the order rendered appellants in contempt of court. On November 26, 1976, the trial court entered a contempt decree imposing two fines against appellants. According to the trial court, the first fine of $153,000.00 "represents the established minimum amount of profits made by [appellants]

as a result of their contemptuous conduct." The second fine of $150,000.00, labeled a "punitive fine" by the court, was to be returned after appellants had assured the court that they had purged themselves of their contemptuous conduct by ceasing the enjoined activities at Burgandy U. This direct appeal from the adjudication of contempt followed. *See* The Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.202(5) (Supp.1978–79).

Appellants attack the contempt citation and fines imposed incident to that citation on several grounds, only one of which we need address here. Appellants renew their argument, raised below, that the contempt proceeding was one of criminal contempt, thus under Pennsylvania law appellants were entitled to a jury trial. We agree, and therefore vacate the contempt citation and fines imposed against appellants.

■ There is no question that if the proceeding below was one of criminal contempt, appellants were entitled to a trial by jury. That right is guaranteed not only by the Sixth Amendment to the United States Constitution, but also by Pennsylvania statutory law, which accords a defendant that right, plus other procedural protections, when charged with indirect (occurring outside the presence of the court) criminal contempt. That law provides in pertinent part:

"In all cases where a person shall be charged with indirect *criminal* contempt for violation of a restraining order or injunction issued by a court or judge or judges thereof, the accused shall enjoy—

(a) The rights as to admission to bail that are accorded to persons accused of crime;

(b) The right to be notified of the accusation and a reasonable time to make a defense, provided the alleged contempt is not committed in the immediate view or presence of the court;

(c) *Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt shall have been committed* . . .

(d) The right to file with the court a demand for the retirement of the judge sitting in the proceeding, if the contempt arises from an attack upon the character or conduct of such judge, and if the attack occurred otherwise than in open court. Upon the filing of any such demand, the judge shall thereupon proceed no further but another judge shall be designated by the presiding judge of said court. The demand shall be filed prior to the hearing in the contempt proceeding. 1931, June 23, P.L. 925, § 1." 17 P.S. § 2047 (1962). (Emphasis added.) Section 2 of the Act, 17 P.S. § 2048, provides that punishment for a contempt specified in the preceding section may be a fine not to exceed $100.00, or imprisonment not to exceed fifteen days, or both.

Our threshold inquiry, therefore, is to determine whether the trial court's response to appellants' alleged contemptuous behavior was an adjudication of criminal contempt or civil contempt. We have consistently held that in determining whether a contempt citation is civil or criminal contempt, our guide is the dominant purpose of the court. *See, e. g., Roth Appeal,* 482 Pa. ——, 394 A.2d 419 (1978); *In re Martorano,* 464 Pa. 66, 78, 346 A.2d 22, 28 (1975); *Woods v. Dunlop,* 461 Pa. 35, 40 n.2, 334 A.2d 619, 622 n.2 (1975); *Brocker v. Brocker,* 429 Pa. 513, 519, 241 A.2d 336, 338 (1968); *Knaus v. Knaus,* 387 Pa. 370, 376–77, 127 A.2d 669 (1956). In carrying out our responsibility to discern a court's dominant purpose for a contempt adjudication, we have established the following guidelines:

"Discovery of the court's dominant purpose requires a functional analysis of the court's action. . . . Basically, the reviewing court must decide whether the citing court's purpose was to 'vindicate the dignity and authority of the court and to protect the interest of the general public.' Such citation is for criminal contempt. If the citation's purpose is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest the citation is for civil contempt." *Woods*

*v. Dunlop, supra,* 461 Pa. at 40 n.2, 334 A.2d at 622 n.2 (citations omitted).

"[I]f the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal." *In re Martorano, supra,* 464 Pa. at 80 n.19, 346 A.2d at 29 n.19.

*See also, Roth Appeal, supra; Commonwealth ex rel. Beghian v. Beghian,* 408 Pa. 408, 184 A.2d 270 (1962); *Knaus v. Knaus, supra.*

■ These firmly established principles of the law of contempt, when applied to the case at bar, leave little doubt that the contempt proceedings initiated against appellants were criminal in nature, and appellants were thus entitled to a trial by a jury of their peers. Initially, we note that the alleged contemptuous conduct consisted solely of the past act of remaining in operation contrary to the court's injunctive order. We have previously said that a contempt citation in response to that act is punitive and the contempt adjudication must be criminal. *In re Martorano, supra.*

Secondly, a review of the trial transcript makes it evident that the court's *dominant* purpose was to "vindicate the dignity and authority of the court and to protect the interest of the general public." The following colloquy between the trial court and defense counsel took place at the outset of the contempt proceeding:

"[DEFENSE COUNSEL]: I would like Your Honor to tell us whether this is a proceeding for civil contempt or for criminal contempt so I'll know procedurally how to protect my client.

THE COURT: This is a hearing to determine whether or not your clients have violated an Order of this Court. You can give it whatever terminology you want. *But it's the feeling of the Court that it has the inherent power to enforce its Order. Otherwise, our entire judicial system would be null and void.* So I'm holding a hearing upon petition of the District Attorney's office on the information or the allegations that I received to determine whether or not this Court's Order has been violated.

[DEFENSE COUNSEL]: . . . Frankly, Your Honor, I can see no reason—with all due respect to Your Honor's position—why we should not know in advance exactly the nature of the proceeding. Your Honor knows the same proceeding can be civil contempt or criminal contempt.

THE COURT: I'm going to tell you again. I think I have clearly explained it, what the nature of these proceedings are. I think the pleadings thus far, the rule to show cause and my issuance of a date setting a hearing date clearly establishes that this Court is concerned as to whether or not its Injunctive Order was violated. And I want—and I'm directing the District Attorney's office or any other person who has knowledge of that effect to come forward to determine whether or not this Court's Order has been violated.

*It is my belief and my ruling, right or wrong, that this Court has the inherent power to enforce its Order. And I've said it before and I'm saying it again, I'm holding this hearing and will impose any penalty or sanctions if this Court feels there was a contempt pursuant to the inherent power of this Court.*" (Emphasis added.)

The final three paragraphs of the "Conclusions of Law" section of the contempt decree read as follows:

It would be repugnant to every fundamental concept of jurisprudence to allow a person to knowingly and intentionally violate the Court's decree and especially in cases where said violation yields a substantial monetary profit to the violators.

A Chancellor may impose a punitive fine and in addition to this punitive fine, the Chancellor may impose a fine whose objective is to eliminate the profitable aspect of the contemptuous conduct.

A Chancellor may impose these fines where its objective is to secure compliance with the Decree of Court. The power to enforce decrees is necessarily·incident to the jurisdiction of the Courts. Without such power, a decree would in many cases be useless. All courts have this

power and must necessarily have it; otherwise, they could not protect themselves from insult or enforce obedience to their process."

Appellee argues that the contempt proceeding was civil because the court's dominant purpose was to prospectively coerce appellants to comply with the court's order. The only judicial response in this case that even arguably supports appellee's position is the $150,000 fine imposed by the court which was returnable to appellants upon satisfying the court they had purged themselves of their contemptuous conduct. Regardless of whether or not the money was returnable to appellants, however, the fact remains that it was a fine imposed for a past act. It is one thing to hold one in civil contempt in an effort to prospectively coerce that person to do some act which the person has refused to do, and it is quite another thing to fine one for an affirmative, past act that is in violation of a court decree. The trial court in this case simply made the fine conditional, upon the happening of some future event, the happening of which would result in forfeiture of the fine. In reality, therefore, the fine would have been imposed for contemptuous conduct committed prior to the fine's collection. As such, the contempt citation was criminal. *In re Martorano, supra.*

Even if we were to assume that the returnable $150,000 fine injected an element of civil contempt into the proceeding, we nonetheless must conclude that the proceeding was one of criminal contempt. Again, "*[t]he dominant purpose* and objective of the Court's Order is the controlling factor in the determination of whether the contempt was civil or criminal." *Brocker v. Brocker, supra,* 429 Pa. 513, 519, 241 A.2d 336, 338 (1968) (Emphasis in original). Even if we were to assume the trial court was seeking to assure future compliance with its order, in addition to its primary goal which we have determined was to indicate its authority, that ancillary purpose cannot work to transform the proceeding from a criminal to a civil one.

Moreover, none of the other factors which this Court has said point to a civil contempt are present in this case. Those factors are present,

"(1) [w]here the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion."

*Knaus v. Knaus, supra*, 387 Pa. at 378, 127 A.2d at 673. Indeed, application of these factors to the facts of this case leads unmistakably to the conclusion that the contempt proceeding instituted against appellant was criminal: (1) the complainant in this case was a governmental agency (the district attorney's office) and not a private person, indicating the criminal nature of the proceeding; (2) the proceeding was not an original injunctive action but initiated in response to an alleged violation of an earlier injunction issued by the court; (3) no private party was afforded relief by the contempt citation, a clear indication that the court's dominant purpose was to impose a criminal contempt citation; *E. g., Woods v. Dunlop, supra* ; (4) the relief requested was obviously not intended to benefit the complainant—the district attorney's office; and (5) the complained of acts were not civil but criminal in nature (prostitution and related sexual offenses), acts the court obviously felt were contumacious thus impelling it to act.

The decree of the Court of Common Pleas is reversed and the case remanded for proceedings consistent with this opinion.

EAGEN, C. J., and POMEROY, J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. The majority holds that, because the $153,-000.00 fine was imposed for the *past* act of remaining in operation contrary to the court's injunctive order, that fine cannot be considered civil. I disagree.

It is true that a person may not be *imprisoned* through the civil contempt process solely for prior misconduct. Imprisonment for civil contempt is permissible only when the imprisonment is conditional, that is, upon compliance with a condition imposed by the court, the contemnor will be released. This was the situation in *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975), cited in the majority opinion, where Martorano was imprisoned for refusal to testify before a grand jury after he had been granted immunity from prosecution. He could effectuate his release at any time by testifying before the grand jury. *See also* cases cited in *In re Martorano*, 464 Pa. at 79 and 80, n.18, 346 A.2d at 28 and 29, n.18, which all dealt with coercive imprisonment for disobedience of a court order or directive. The civil contempt decree in such cases is designed to prospectively coerce contemnor's obedience.

However, to the extent that *Martorano* and the majority opinion today suggest that *no fine* may ever be imposed for past acts of contempt, they eliminate a valuable remedy which has repeatedly received our approval. Where the dominant purpose is not coercive but compensatory, a court is empowered to civilly impose an unconditional, non-punitive fine upon a contemnor payable to the litigants injured by the defendant's prior actions amounting to contempt. "[I]t is clear that a Court can for present *or past acts of misbehavior* amounting to civil contempt *impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to the county or to the individual who was injured." Brocker v. Brocker, supra,* 429 Pa. at 519–20, 241 A.2d at 339 (emphasis added) and *see* cases cited therein.

For example, in *Commonwealth ex rel. Beghian v. Beghian*, 408 Pa. 408, 184 A.2d 270 (1962), we sustained, as an appropriate penalty for civil contempt, the lower court's imposition of a $2,500 unconditional fine payable for the benefit of appellee to compensate for expenses incurred as a result of appellant's prior contemptuous acts. However, we reversed a $25,000 unconditional fine in the same case because that fine was entirely punitive and unrelated to *any* measure of damages for injuries sustained by appellee. The $2,500 fine was rationally based upon appellee's losses, while the amount of the larger fine was arbitrarily calculated and adopted solely to punish contemnor. In *Beghian* and similar cases, because of the *remedial nature* of the fine imposed to compensate for the injuries caused by the contumacious behavior of the defendant, the fact that the fine was imposed solely for past contemptuous conduct was not fatal to a finding of civil contempt. *See Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 448, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Altemose Constr. Co. v. Bldg. and Constr. Council of Philadelphia*, 449 Pa. 194, 218, 296 A.2d 504, 517 (1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1901, 35 L.Ed.2d 392 (1973); *Philadelphia Marine Trade Ass'n. v. Int'l. Longshoreman's Ass'n*, 392 Pa. 500, 513–527, 140 A.2d 814, 821–828 (1958) (Bell, J. concurring).

In the case at bar, the lower court was presented with a unique situation requiring a unique remedy. Appellants flagrantly and intentionally disregarded the order of May 13th by continuing to provide sexual services to patrons of Burgandy U. in the manner enjoined by the order. They continued to acquire new employees and to instruct them in the performance of their duties. They continued to reap substantial profits from the business while fully cognizant that their actions were in direct violation of the injunction.

The $153,000.00 fine levied upon appellants was not remedial in the strict sense that particular litigants were compensated for actual *pecuniary* losses suffered and proven. Yet, its character is *essentially* remedial in that it compensates

the citizens of Westmoreland County for the injuries wrought by appellants' willful misconduct, which injury would, by the very nature of the misconduct, be difficult to calculate on the basis of out-of-pocket losses. The amount of the fine was calculated instead by reference to testimony introduced at the hearings on the injunction and the contempt citation which established the minimum amount of profit made by appellants as a result of their contemptuous actions from May 13, 1975 to December 29, 1975, during which period appellants were shown to be in continuous violation of the injunction order. As noted in the majority opinion, the lower court stated in its "Conclusions of Law" that "the Chancellor may impose a fine *whose objective is to eliminate the profitable aspect of the contemptuous conduct.*"

Thus, the "fine" was not an arbitrary figure of the kind typically used in *criminal* contempt cases. The amount was chosen so as to ensure that appellants would not be unjustly enriched by their egregious disregard of the May 13th order. This "unjust enrichment" measure relieved appellants of profits they should never have made, which profits provided a reliable basis upon which to approximate the monetary value of the injuries they caused by continued operation of a business that had been adjudged a public nuisance. As a matter of policy, I find the use of the unjust enrichment measure an appropriate and necessary measure of civil contempt fines in such cases. *See D. Dobbs, Contempt of Court: A Survey,* 56 Cornell L.Rev. 183, 276–77 (1971).

The use of the unjust enrichment measure for calculating the amount of a fine imposed for civil contempt is not without precedent. The United States Supreme Court permitted the use of such a fine in a civil contempt proceeding stemming from violation of an injunction granted in a patent infringement suit. *Leman v. Krentler-Arnold Co.,* 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). The fine imposed in *Leman* by the District Court was measured by the amount of profits made by the contemnor through its injunction violation. The Supreme Court upheld the fine,

holding "[w]hile the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter [profits] may none the less be included in the concept of compensatory relief." *Id.* at 456, 52 S.Ct. at 241. The profits measure was deemed a proper component of compensation. The fine was, therefore, remedial, not punitive.

The Circuit Court of Appeals for the Second Circuit has logically interpreted *Leman* as authorizing an award in a civil contempt proceeding based on the amount of profits made as a result of a contemnor's disobedient acts, even where the plaintiff has not suffered actual pecuniary harm. In *United States v. Aberbach*, 165 F.2d 713 (2d Cir. 1948) the Second Circuit considered the propriety of a fine imposed in a civil contempt proceeding arising from violation of an injunction. The fine was sustained as bearing *some reasonable relation* to the amount of damages which the injunction violation caused complainant (the United States). The Second Circuit stated: *"[t]he fine, moreover, need not be exclusively a remedy for the damages, but might, without actual proof of the amount, be based upon* the complainant's costs and attorney's fees or upon *the amount of profits accruing to the contemnor from the violation." Id.* at 715 (emphasis added). In *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 470 (2d Cir. 1958), the Second Circuit again considered the appropriateness of measuring a civil contempt fine by reference to the defendant's profits and held "[a]n award in such cases [civil contempt cases stemming from patent and trademark infringement suits] surely cannot be characterized as 'punitive'. For its effect goes no further than to give to the plaintiff the profits derived by the defendant's wrongful conduct; it does not take from the defendant *assets not related to its wrongful conduct. . . [S]uch a recovery rests 'upon the equitable principle of unjust enrichment' which is the antithesis of punishment.* Restatement, Restitution, § 1." [1]

1. While approving the unjust enrichment measure for arriving at the amount of the civil contempt fine, the court nevertheless reversed the contempt order because, on the record before them, there was insufficient evidence to justify even a *prima facie* showing of the

I am not unmindful of the fact that in these unjust enrichment cases the fine was awarded to a litigant who had been injured by the contemptuous conduct, which injury was presumptively of a pecuniary nature (i. e., damages to a complainant's sales market or to its goodwill), and that, in the present case, the moving party was the Commonwealth acting on behalf of the public whose injury consisted primarily of intangible harm to the health, welfare and safety of the citizens. Yet that fact should not enable appellants to ignore a specific court order with impunity, and then retain enormous profits made at the expense of the community. Since the fine was intended to do no more than to give to the community (note, the fine was payable to Westmoreland County) a monetary substitute for those injuries based on the profits derived from appellants' wrongful and intentional misconduct, and did not take from them assets unrelated to such conduct, the dominant purpose of the fine was remedial and, hence, could be imposed unconditionally. As the dominant purpose of the $153,000 fine was remedial, the contempt was civil and the statutory procedures and limited sanctions mandated for criminal contempt proceedings are not applicable.

And, since the sanction imposed indicates civil contempt, the Fifth and Fourteenth Amendments of the United States Constitution do not require jury trial protection. The right to a jury trial in a contempt proceeding applies only to cases involving "serious criminal contempt". *Bloom v. Illinois*, 391 U.S. 194, 198–99, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). A contempt is a "serious criminal contempt" if a sentence of imprisonment is imposed which exceeds six months. *Codis-*

amount of profit made by the defendant. *Id. See also National Merchandising Corp. v. Leyden*, Mass., 348 N.E.2d 771 (1976) (discussion and application of unjust enrichment theory to fines imposed for civil contempt); *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (discussion of unjust enrichment measure in forfeiture proceeding). *Contra National Drying Mach. Co. v. Ackoff*, 245 F.2d 193 (3d Cir. 1957), *cert. denied* 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957) (rejecting application of unjust enrichment measure in civil contempt proceeding).

*poti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). For petty criminal contempts or for civil contempts, there simply is no constitutional right to a jury trial. *Riccobene Appeal,* 439 Pa. 404, 424–25, 268 A.2d 104, 115 (1970).

As to the $150,000 fine, its conditional nature clearly indicates a civil contempt. *Brocker v. Brocker, supra* ; *In re Martorano, supra.* This fine was prospective—it sought to coerce future compliance with the May 13th order. The majority opinion recognizes the prospective purpose of the fine "which was returnable to appellants upon satisfying the court they had purged themselves of their contemptuous conduct." At 1300. Since proof of future compliance with the injunction order would result in remittance of the $150,-000 fine, I fail to understand the majority's steadfast adherence to the view that "it was a fine imposed for a past act." *Id.* If it were in fact imposed for a past act, the appellants would have no opportunity to purge themselves of their contempt. Existence of the opportunity to purge by performing the requisite condition necessarily renders the $150,-000 fine civil.

As with the $153,000 fine, this fine ($150,000) was also civil and the statutory and constitutional safeguards for criminal contempt proceedings were not applicable. I would affirm the lower court on this issue, therefore, and proceed to the other issues.