421 A.2d 696

**John Neville CAHALIN**

v.

**Mary Eileen GOODMAN.**

**Appeal of Salena E. REBERT.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Aug. 29, 1980.

H. Stanley Rebert, York, for appellant.

Alan M. Black, Allentown, for appellee, Cahalin.

Before CERCONE, President Judge, and HESTER and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal from the April 4, 1978, order of the Court of Common Pleas of Lehigh County, holding appellant, Salena E. Rebert, in contempt. Two issues are presented on appeal: namely, whether the court below had the authority to summarily hold the appellant in contempt of court, and whether the court violated appellant's Fifth Amendment privilege against self–incrimination.

The circumstances surrounding the issuance of the contempt citation involved a child custody matter. A lengthy recitation of both the facts and procedural history is necessary before any discussion of the issues can be entertained. On December 28, 1977, Mary Eileen Goodman, the natural mother of John and Kevin Cahalin, failed to return the aforementioned children to their natural father, John Neville Cahalin, who previously had been awarded primary custody by orders of the Court of Common Pleas of Lehigh County, Pennsylvania, and the Circuit Court of Montgomery County, Maryland. On January 13, 1978, a hearing was held before the Lehigh County Court of Common Pleas on a rule to show cause why Mary Eileen Goodman should not be held in contempt for failing to return the children. The appellant, Salena E. Rebert, was subpoenaed to appear at this hearing, along with her husband, and they were directed to bring with them their personal telephone records.[1] Mrs. Rebert, however, failed to attend the hearing. The husband, Hugh F. Rebert, appeared as requested, and brought the telephone records as well as a medical excuse for his absent wife. Subsequently, on January 19, 1978, it was ordered that a rule issue upon the appellant, Salena E. Rebert, to show cause why an attachment should not issue against her. On February 2, 1978, an answer to the petition and order

---

1. Mr. and Mrs. Rebert are friends with whom Mary Eileen Goodman resided for a number of years.

was filed. A hearing was held on March 9, 1978, before Judge Backenstoe. On March 20, 1978, the rule to show cause why appellant should not be held in contempt was made absolute, and appellant was found in contempt for her failure to appear at the January 13, 1978 court proceeding. Although sentencing had originally been set for March 30, 1978, the date was continued until April 4, 1978.

On the day set for sentencing, April 4, 1978, appellant appeared before the court desiring to purge herself of the contempt citation, which was issued for failure to appear at the January 13, 1978 hearing by asserting her Fifth Amendment privilege against self–incrimination.[2] Apparently, appellant had cooperated with the defendant below, Mary Eileen Goodman, in the plot to gain illegal custody of the defendant's two children: that is, she discussed with the defendant the alternative of taking the children to another jurisdiction and remaining there in violation of both court orders, she accompanied the defendant to another jurisdiction where the daughter established residence, and, she knew that when the defendant picked up the children at their father's Allentown, Pennsylvania home, the defendant intended to retain permanent custody by removing the children to another jurisdiction. Such conduct, argued counsel for the appellant, would give appellant accomplice status under Section 306 of the Pennsylvania Crimes Code,[3] and she could be considered as having violated Section 2904 of the Pennsylvania Crimes Code,[4] which section makes it a crime to interfere with the custody of children. Therefore, counsel

---

2. It is important to note that at this point in time, because no sentence had been imposed, the attempt to purge the appellant of contempt was premature. See, e. g., *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975); *Simmons v. Simmons*, 232 Pa.Super. 365, 335 A.2d 764 (1975).

3. The definition of the term "accomplice" appears in the Crimes Code, 18 Pa.C.S. § 306(c) (1973).

4. The statutory compilation appears at 18 Pa.C.S. § 2904(a) and reads in pertinent part: "A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so."

for appellant maintained that his client had Fifth Amendment rights. The court, however, found that "this is not a case nor are the questions such upon which the witness had a right to exercise the privilege against self–incrimination." Thus, in an order dated April 4, 1978, rather than sentencing appellant for the previously adjudicated contempt for failure to appear at the January 13 hearing, the court below found appellant in contempt for failing to answer questions regarding the location of the children, and sentenced her to Lehigh County Prison until such time as she indicated her willingness to provide the information. Appellant then filed a petition for supersedeas which was granted. In entering this April 4, 1978 order, the court below evidently failed to dispose of the first contempt charge levied against the appellant for her failure to appear at the January 13 hearing; instead, the order indicates that the court issued a second contempt charge against the appellant for her failure to reveal the whereabouts of the children, found her guilty of that charge, and sentenced her to jail.

 Appellant initially contends that the lower court had no authority to summarily hold her in contempt for failing to reveal the location of the children. Because the procedural rights differ, according to whether the contempt is civil or criminal, the nature of the contempt charge must first be ascertained. To achieve this end, the reviewing court must determine the citing court's dominant purpose for issuing the contempt charge: essentially, if the dominant purpose is to punish the contemnor for disobedience, the contempt is criminal, but if the dominant purpose is to coerce the contemnor to comply with an order of the court, the contempt is civil. In enunciating this standard, our Pennsylvania Supreme Court in *In Re B*, 482 Pa. 471, 394 A.2d 419 (1978), wrote:

> Basically, the reviewing court must decide whether the citing court's purpose was to vindicate the dignity and authority of the court and to protect the interest of the general public. Such a citation is for criminal contempt. If the citation's purpose is to coerce the contemnor into

compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest, the citation is for civil contempt. *Id.*, 482 Pa. at 476, 394 A.2d at 421, citing *Commonwealth v. Charlett*, 481 Pa. 22, 391 A.2d 1296 (1978).

Instantly, the April 4, 1978, court order attempts to coerce the appellant into revealing the location of the two children for the benefit of their natural father, the plaintiff below, John Neville Cahalin. Because the dominant purpose of the court's action is coercive and remedial and will benefit a private party, the contempt citation must be characterized as civil.

 Despite the fact that courts, through civil contempt citations, have the inherent power to enforce compliance with their lawful orders, this power is not without prescribed limitations. *Simmons v. Simmons*, 232 Pa.Super. 365, 369, 335 A.2d 764, 766 (1975). In clearly defining the practice and procedure for civil contempt, our Pennsylvania judiciary has deemed five elements essential to civil contempt adjudication: these include (1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt. *Crislip v. Harshman*, 243 Pa.Super. 349, 352, 365 A.2d 1260, 1261 (1976). *See also, Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1969); *Simmons v. Simmons*, supra, *Commonwealth v. Showden*, 1 Brewster 218, 219 (1868). The absence of these procedural safeguards is obvious in the present case in respect to the second contempt citation which is the subject of the present appeal. When appellant persisted in refusing to disclose the location of the defendant's two children, the court summarily held her in contempt and remanded her to the custody of the Sheriff of Lehigh County until such time as she disclosed the information. This action on the part of the lower court with regard to this second contempt citation is inconsistent with the procedure

required in an adjudication for civil contempt.[5] We, therefore, vacate the judgment and reverse the order of the lower court.

Because this case can be decided on the foregoing issue, which recognizes the procedural error committed below in the civil contempt adjudication, there is no need to address appellant's second argument which essentially asserts that the lower court violated her Fifth Amendment privilege against self–incrimination.[6]

The order of the court below is reversed, and the case is remanded for further proceedings consistent with this opinion in the event further proceedings are necessary.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the opinion of Judge Backenstoe of the court below.

5. However, when reviewing the procedural history pertinent to the first contempt citation, issued for appellant's failure to appear at the January 13, 1978 hearing, this court notes that all of the prerequisites essential to a contempt adjudication were met. Nonetheless, on the date set for sentencing, the court below failed to finalize the matter by imposing a fine or a sentence.

6. Although not deciding the self–incrimination issue, we note that cases analyzing the Fifth Amendment privilege conclude that this constitutional provision must have a broad construction in favor of the right which it was intended to secure. Moreover, the cases reveal that the underlying purpose of the constitutional provision was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he, himself, had committed a crime. *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110 (1892). *See also, Miranda v. Arizona*, 384 U.S. 463, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966) ("There can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves."); *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (Fifth Amendment privilege applicable to the states, and substantive standards underlying privilege also applied with full force to state court proceedings.)