# Barrett v. Rendell

*John W. Morris*, for petitioner.
*Jesse Milan, Jr.*, for respondent.

TAKIFF, *J.*, October 31, 1984—Presently before the court is plaintiff Robert A. Barrett's petition for enforcement of an order issued by the Honorable Ethan Allen Doty on June 30, 1981, ordering the personnel director and the district attorney "to take whatever administrative steps are necessary to reinstate plaintiffs in their former positions with the district attorney's office." Ambron v. Taylor, 25 D.&C. 3d 269 (1981), aff'd sub nom., Ambron v. Philadelphia Civil Service Commission, 73 Pa. Commw. 628, 458 A.2d 1055 (1983). More specifically, plaintiff asserts that the district attorney improperly required him to take and pass a polygraph examination as a condition to his reinstatement as a Prosecution Detective I. Plaintiff therefore petitions this court to order enforcement of the June 30, 1981 order by Judge Doty and to issue a rule compelling District Attorney Edward G. Rendell to show cause why he should not be adjudged in contempt. Upon consideration of plaintiff's petition, defendant's re-

sponse thereto, oral argument thereon, and for the reasons set forth below, this petition is granted insofar as it seeks plaintiff's reinstatement without the requirement of a polygraph test and denied as to the request for a rule to show cause against District Attorney Rendell.

Plaintiff Robert Barrett was appointed a "Prosecution Detective I" on May 16, 1977, pursuant to section 1 of the Act of June 3, 1919, P.L. 369, as amended, 16 P.S. §7741 (Purdon 1956).[1] On June 9, 1978, the district attorney transferred plaintiff Barrett and three other detectives to the Police Department. Under protest, they complied with the requirements for separation from the district attorney's office, completed application forms for the police department and were sworn in as police officers.[2] They nonetheless filed complaints protesting

1. See Ambron v. Philadelphia Civil Service Com'n, 54 Pa. Commw. 488, 422 A.2d 225, 226 (1980). Section 7741 provides that:

"In each and every county of the first class of this Commonwealth, the district attorney may appoint a chief county detective, an assistant chief county detective, and special county detectives not exceeding twenty in number, whose duties it shall be to investigate and make report to the district attorney as to the conduct in office of magistrates, constables, deputy constables, and other officers connected with the administration of criminal justice; to make such investigation and endeavor to obtain such evidence as may be required by the distict attorney in any criminal case; and perform such other duties as the district attorney may direct. Said detectives shall be general police officers, and shall have all powers now conferred on constables by existing laws of this Commonwealth so far as they relate to crimes or criminal procedure." 16 P.S. §7741 (Purdon 1956).

2. Ambron, 422 A.2d 225-26. The other transferees were Al Ambron, Oscar Bowen and Joseph Kelly. Id. Although they participated in the complex history of plaintiff's legal appeals of his transfer, they are not involved in the instant petition. Two have retired from public service. The third transferee is

this transfer with the district attorney and police commissioner. In addition, they requested a hearing before the Philadelphia Civil Service Commission but the commission denied this request for lack of jurisdiction. Ambron, supra, 422 A.2d at 226.

The transferees thereafter appealed the commission's decision to the court of common pleas, which denied their appeal on October 4, 1978 for lack of jurisdiction. Ambron, 422 A.2d at 226. Meanwhile, on September 26 and 27, 1978, the transferees requested a hearing before District Attorney Rendell and Personnel Director Lewis Taylor, but these two officials refused to grant plaintiffs a hearing. The transferees appealed these refusals to the court of common pleas on October 26, 1978, but once again the court refused to hear this appeal for lack of jurisdiction on April 3, 1979. Ambron, 25 D.&C. 3d at 271 (1981).

The transferees subsequently appealed these two court orders to the Commonwealth Court, which consolidated both appeals. See Ambron, 422 A.2d at 225-26. The Commonwealth Court noted initially that the lower court orders were issued without adjudication of the substantive merits of plaintiffs' underlying claim which was "whether the contested 'transfers' violated the appellants' rights under the Philadelphia Home Rule Charter and the Civil Service Regulations." Ambron, 422 A.2d at 227. Plaintiffs contended that their transfers violated section 13.02 of the Philadelphia Civil Service Regulations because they were not transferred within the same class.[3] The Commonwealth Court noted

---

awaiting reinstatement but he has not been asked to take a polygraph test because of his continuous service with the police force. Memorandum of law of plaintiff at 2.

3. Ambron, 422 A.2d at 227. Section 13.02 of the Philadelphia Civil Service Regulations provides as follows:

that the restrictions which section 13.02 imposed on transfers that were not "in the same class" bestowed on Civil Service employees a "legal immunity" from involuntary inter-class transfers. Although the factual record before the Commonwealth Court was insufficient for determining whether these particular plaintiffs had actually been improperly transferred, the court emphasized that a decision by the district attorney to transfer detectives from one class to another would constitute an invasion of a legal immunity that was tantamount to an adjudication pursuant to section 101 of the Administrative Agency Law, 2 Pa.C.S. §101 (1984).[4] Ambron, 422 A.2d at 227. The Commonwealth Court therefore concluded that the lower court had improperly refused to consider the merits of the transferees' claim since their allegations of improper inter-class transfer set forth "a case of local agency action affecting a right or immunity cre-

---

"ASSIGNMENTS AND TRANSFERS. An appointing authority may assign any Civil Service employee under his jurisdiction from one position to another in the same class under his jurisdiction. Transfer of a Civil Service employee from a position in one department, board or commission to a position in another, may be made with the approval of the Director and the consent of the two appointing authorities concerned, provided the positions are in the same class. An employee having permanent Civil Service status, properly transferred from one position to another in the same class, shall retain his permanent Civil Service status, and shall not be subjected to a probationary period in his new position."

4. Section 101 of this law defines "adjudication" as follows: Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure of forfeiture of property, paroles, pardons or releases from mental institutions.

ated by the Philadelphia Civil Service Regulations and such would provide the predicate for judicial relief under the Local Agency Law." Ambron, 422 A.2d at 225 (citing Zimmerman v. City of Johnstown, 27 Pa. Commw. 42, 365 A.2d 696 (1976); Kretzler v. Ohio Township, 14 Pa. Commw. 236, 322 A.2d 157 (1974) ). The Commonwealth Court stated that when plaintiffs appealed the transfer decision or "adjudication" to the lower court after being denied an agency hearing, the lower court was obliged to adhere to section 754(a) of the Local Agency Law[5] and either hear the appeal de novo or remand the case to one of the interested agencies to develop a full factual record. Ambron, 422 A.2d at 228 (citing 2 Pa.C.S. §754 (a) (Purdon Supp. 1984) ). In this case, the Commonwealth Court concluded that the most expedient alternative was for the lower court to conduct a de novo hearing focusing on whether the positions of Prosecution Detective I and Police Officer II were within the same class. The case was therefore remanded back to the lower court for this determination. Ambron, 422 A.2d at 226-28.

The lower court did not have to make this factual determination, however, because defendants "concede(d) that the positions of Police Officer and of Prosecution Detective are not in the same class." Ambron, 25 D.&C. 3d at 272. The court of common pleas then concluded that there was no authority under the Home Rule Charter §7-401(m) or under

---

5. 2 Pa.C.S. §754(a) provides:

"In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court."

Civil Service Regulation §13.02 for this interclass transfer.

Defendants sought to justify the transfer by asserting that the transfer was valid under Civil Service Regulation §2.21, which set forth a definition of the term "Equivalent Position Change."[6] The court, however, noted that there were no regulations implementing "equivalent position changes" nor did the Home Rule Charter make any reference to "equivalent position changes". Ambron, 25 D.&C. 3d at 273. It rejected defendant's arguments that these transfers were valid because they were not permanent or because they were merely routine personnel shifts. On June 30, 1981, the court ordered "that this matter is remanded back to the Personnel Director and that he and the District Attorney are to take whatever administrative steps are necessary to reinstate the plaintiffs in their former positions with the district attorney's office." Id. at 275.

Defendants appealed this order to the Commonwealth Court which affirmed the order on April 27, 1983. In so doing, it rejected defendant's argument that the case was moot due to the resignation of three plaintiffs, noting that plaintiffs were "not incapable of reinstatement." Ambron v. Civil Service Commission, 73 Pa. Commw. 628, 458 A.2d 1055, 1056 (1983). Defendants subsequently appealed to the Pennsylvania Supreme Court, but allocatur was denied.

---

6. Ambron, 25 D.&C. 3d at 272-73. Section 2.21 of the Philadelphia Civil Service Regulations provides:

"EQUIVALENT POSITION CHANGE — a reassignment of an employee from a position in one class to a position in a comparable class in the same salary range and having substantially the same minimum qualification requirements, skills, aptitudes or abilities."

After these appeals were exhausted, plaintiff Barrett, who had resigned from the department in early 1981, sought reinstatement with the district attorney's office. He was informed that he was required to fill out certain forms, undergo a physical examination and pass a polygraph test. Plaintiff's memorandum of law at 5. Plaintiff objects to the requirement that he pass a polygraph test on the ground that the district attorney is in essence unilaterally amending the court order by premising reinstatement on passing a polygraph test. This argument begs the question because Judge Doty's order conditioned plaintiff's reinstatement upon the satisfaction of "whatever administrative steps are necessary." Ambron, 75 D.&C. 3d at 275. The issue before this court, therefore, is whether passing a polygraph test is an essential administrative step for the reinstatement of plaintiff as a Prosecution Detective I.

The crux of defendant's argument in support of requiring plaintiff to submit to a polygraph test is that in seeking reinstatement more than one year after his termination, plaintiff must satisfy procedural requirements more strict than those imposed on persons seeking reinstatement within one year of termination. Defendant admits that the "District Attorney's Office had never faced reinstating a detective who had been away from his duties for more than a year". Defendant's memorandum of law at 6. In its efforts to comply with Judge Doty's order, defendant stated that "the office determined, after consultation with the Police Department, what administrative steps were appropriate for reinstating such a person. *The procedure used by the Police Department* includes: (1) a physical examination; (2) a background check and investigation; and (3) poly-

graph examination". Defendant's memorandum of law of 6. (Emphasis added.)

We note, initially, that courts "must proceed with caution where an administrative body is interpreting its own regulation in reaching a decision and we must defer to the agency's interpretation of such regulations in most instances." Homer v. Comm. Dept. of Ed., 73 Pa. Commw. 623, 458 A.2d 1059, 1061 (1983) (citing Comm. v. Beck Electric Constr., Inc., 485 Pa. 604, 403 A.2d 553 (1979)). As a general rule, the scope of review of an appeal from an adjudication by an administrative agency or official is limited to a determination of whether there was an abuse of discretion, an error of law, a violation of constitutional rights or a procedural error. Central York School District v. Ehrhart, 36 Pa. Commw. 278, 387 A.2d 1006, 1008 (1978) (citing Dept. of Ed. v. Great Valley Sch. Dist., 23 Pa. Commw. 423, 352 A.2d 252 (1976)). See also, Civil Service Commission of Philadelphia v. Saladino, 47 Pa. Commw. 249, 408 A.2d 178 (1979); 2 Pa.C.S. §754 (Purdon Supp. 1984). In light of the peculiar history of this case, in which both the Philadelphia Civil Service Commission and the Court of Common Pleas in 1978 initially refused on the grounds of lack of jurisdiction to entertain plaintiff's claim while both the district attorney and director of personnel similarly refused to grant plaintiff a hearing, we will consider the district attorney's requirement that plaintiff pass a polygraph test as an adjudication ripe for review by this court.

The case presently before this court obviously differs from that before the Commonwealth Court in at least two ways: (1) the record does not suggest the plaintiff sought, or was denied, an agency hearing on the propriety of requiring polygraph tests for reinstatement; and (2) the "adjudication" by the

district attorney was rendered in response to his attempt to conform to a court order. Upon consideration of plaintiff's assertion that defendant violated a court order and under all the circumstances, we deem it appropriate to consider plaintiff's petition rather than remand the proceeding to the involved agency "to make a full and complete record." Ambron, 422 A.2d at 228. A remand is unnecessary because we are confronted primarily with a legal, procedural issue rather than with a factual issue.

The procedures employed by the district attorney in determining that plaintiff was required to take a polygraph examination as a pre-requisite for his reinstatement did not conform to the dictates of the Philadelphia Home Rule Charter or to the Philadelphia Civil Service Commission Regulations with respect to amendments or additions to the civil service regulations.

The Philadelphia Civil Service Regulations provide that "(a)dditions to and amendments or repeal of regulations may be made from time to time as circumstances and conditions may require, in accordance with the provisions of section 7-400 of the Charter." Phila. Civ. Serv. Regs. Section 3.02. Section 7.7-400 of the Home Rule Charter sets forth the following procedure for preparation and adoption of the Civil Service Regulations:

"The civil service regulations shall be prepared by the personnel director. Regulations pertaining to the position classification plan, pay plan, hours of work, holidays and annual vacation and sick leave shall be submitted by the personnel director for approval to the Civil Service Commission and Administrative Board. *All other civil service regulations shall be submitted by the personnel director for approval to the Civil Service Commission only. After the requisite approvals shall have been obtained, the*

*regulations shall be filed by the personnel director with the Department of Records, where they shall be available for public inspection for thirty days, and public notice of such filing shall be given as in the case of other regulations.*

*If any person affected by the proposed regulations or any citizen shall present to the Department of Records a written request therefor, he shall be afforded a public hearing before the Commission.* The Commission may after a hearing re-affirm its approval or direct that the regulations be changed but any modification of a regulation which required initially the approval of the Administrative Board shall be submitted to it for approval. The subsequent procedure shall be the same as in the case of other regulations." 351 Pa. Code §7.7-400 (Philadelphia Home Rule Charter). (Emphasis added.)

An explanatory annotation to this section of the Home Rule Charter emphasizes that the promulgation of "fair" civil service regulations is a vital public concern that requires adequate public notice with an opportunity to be heard:

"Employees and citizens have a vital and direct concern in civil service regulations being fair and effectuating civil service objectives. They are therefore afforded notice of proposed civil service regulations and an opportunity to be publicly heard thereon before the Commission." 351 Pa. Code §7.7-400, Annotation 4 (Phila. Home Rule Charter).

Consequently, once the district attorney's office concluded that it lacked "the necessary procedures" for reinstating plaintiff, it was incumbent on that office to adhere to the guidelines articulated in section 3.02 of the Philadelphia Civil Service Regulations and section 7.7-400 of the Home Rule Charter for making the requisite additions to these regulations.

Various departments of the city government have developed specific rules in supplementation of the civil service regulations. The police department, for instance, has a Police Duty Manual which regulates police conduct and has been subject to judicial review.[7] Defendant, however, has failed to cite any authority analogous to the Philadelphia Police Duty Manual which his office has adopted which would justify the district attorney's actions in requiring plaintiff to submit to a polygraph test. Instead, defendant suggests that its reinstatement policy has been molded by the civil service regulations:

"When *newly recruited* prosecution detectives are employed in the district attorney's office, they are routinely subjected to a three-part test to determine their qualification for the sensitive work of a detective. That test includes: 1) a physical examination; 2) a background check and interview which reviews their character for trustworthiness, criminal activity, etc.; and 3) a polygraph examination which, among other things, verifies their lack of involvement past or present in criminal activity. These tests are also given by the police department for new law enforcement recruits. *This process has been modified by the district attorney's office, however, for certain kinds of reinstated detectives in light of the Civil Service Regulations.* Defendant's memorandum of law at 4. (Emphasis added.)

More specifically, defendant emphasizes that:

"Under Civil Service Regulation 15.03 (Exhibit "B"), an employee who has resigned in good stand-

---

7. See, e.g. Fabio v. Civil Service Commission of Phila., 489 Pa. 309, 414 A.2d 82 (1980). In Fabio, a policeman was dismissed for violating Article I, Section 1.75 of the Philadelphia Police Duty Manual for engaging in "conduct unbecoming an officer" when he arranged an extra-marital relationship between his wife and a fellow police officer.

ing from City employment may be reinstated within one year of his resignation to a position in the same or comparable Civil Service class for which he is qualified pending the approval of the appointing authority. Under this regulation, the district attorney has used a physical examination only to approve detectives returning within one year. Included in that category was Detective Frank Hahn, who left the office in good standing and returned for reinstatement within one year of his departure. Hahn was required to only take a physical examination.

Barrett returned for reinstatement in 1983, more than a year after his resignation from the City. He did not, therefore, fall within Regulation 15.031 or the District Attorney's policy regarding a physical examination for those who did." Defendant's morandum of Law at 4.

Defendant concedes that his reinstatement policy for those who seek reinstatement within one year of resignation is controlled by Civil Service Regulation 15.03.[8] In so doing, however, defendant makes an

---

8. Neither party cites §20-207, Philadelphia Code, which provides:

(1) All assistant district attorneys shall be exempt from the civil service.

(2) The chief detective and ten additional detectives in the office of the District Attorney shall be exempt from the civil service provisions of the Charter.

Since defendant is in the best position to determine whether plaintiff's former position as a Prosecution Detective is analogous to one of "the 10 additional detectives" referred to in this ordinance, we will conclude that this provision does not apply to plaintiff's former position. We note, for instance, that plaintiff was initially appointed to his position pursuant to 16 P.S. §7741 (Purdon 1956), which provided for the appointment of "special county detectives not exceeding twenty in number." See note 1 supra. Even if the 20 "special county detectives" referred to in section 7741 are the same as the ten "additional

unwarranted assumption, specifically that Civil Service Regulation 15.03 is inapplicable in this case. Defendant notes that plaintiff "returned for reinstatement in 1983 more than a year after his resignation from the city." Defendant's memorandum of law at 4. An examination of the record reveals that plaintiff sought reinstatement as early as 1978, apparently within months of his transfer, and that he submitted to transfer to the police department "under protest." See Ambron, 422 A.2d at 226 (noting that plaintiff was transferred in June 1978 and that he requested reinstatement in an appeal to the lower court on October 26, 1978). It was only because of protracted litigation, caused at least in part by the refusal of the Philadelphia Civil Service Commission, the court of common pleas, the district attorney and the director of personnel of the City of Philadelphia to grant plaintiff an initial hearing in 1978 that plaintiff did not "return" for reinstatement until 1981 pursuant to a court order. In light of these facts, we conclude that the reinstatement procedures which the district attorney normally applies to those seeking reinstatement within a year of resignation should be applied to plaintiff Barrett so that he cannot be compelled to submit to a polygraph test as a pre-requisite for reinstatement.

In reaching this conclusion, we do not reach the issue of whether a Prosecution Detective I seeking reinstatement after one year can be required to sub-

---

detectives" referred to in §20-207 of the Philadelphia Code, there presumably are at least ten special county detectives who fall within the Philadelphia Civil Service Regulations as defendant has consistently suggested. For a Pennsylvania Supreme Court case generally construing this section of the code, see Commonwealth. v. Moak, 452 Pa. 482, 307 A.2d 884, 887 (1973).

mit to a polygraph test. Pennsylvania statutes, however, provide that while it is a misdemeanor of the second degree for an employer to require a polygraph test as a condition of employment, this provision does "not apply to employees or other individuals in the field of public law enforcement or who dispense or have access to narcotics or dangerous drugs." 18 Pa. C.S.A. §7321 (Purdon 1983). Plaintiff concedes that the police department may require an applicant for a new position to take a polygraph test, yet he argues that an existing employee cannot be dismissed "for failing or refusal to take such a test" and cites a 1961 Pennsylvania Supreme Court case, Stape v. Civil Service Com'n, 404 Pa. 354, 172 A.2d 161 (1961). Admittedly, the Supreme Court held in Stape that "neither the Police Commissioner nor the Civil Service Commission had the authority to require the test (polygraph) nor to dismiss appellees for refusal or failure to take the test," but the sweep of this holding is limited somewhat by the court's explanation that "nowhere in the City Charter, the city ordinances, the Civil Service Regulations, or the *police department regulations* is there a provision which authorizes the police commissioner or the Civil Service Commission expressly or by implication, to take such a test." Stape, supra, 172 A.2d at 164. (Emphasis added.) Moreover, not only was Stape decided prior to the enactment of 18 P.S. §7321 but it is not clear whether Stape's general principle can be applied to plaintiff, because its application necessitates the conclusion that reinstatement of an employee is analogous to dismissal of an existing employee. In support of this proposition plaintiff cites only In Re Geis, 341 Pa. 413, 19 A.2d 368 (1941), but this case focused on the civil service acts affecting cities of the second class. Geis, supra, 19 A.2d at 369 (citing 53 P.S.

§9395.1 et seq.; 53 P.S. §9361 et seq.). The relevant statutory provisions upon which the Geis court relied differed from the relevant civil service regulations applicable in Philadelphia. The Geis court, for instance, relied on the following statutory provisions: *"Reinstatements* as employees in said bureaus of fire . . . *may be made without any restriction or restrictions as to time.* No examination other than a physical examination, as directed by the Civil Service Commission, shall be required in any case of reinstatement." (Emphasis added). Geis, supra, 19 A.2d at 369 (citing 53 P.S. §9395.4). The court thereafter concluded that "it follows that when an employee is reinstated he is entitled to the same rights as any other employee having an 'absolute appointment,' as that term is used in the Act of 1907." Geis, supra, 19 A.2d at 369. In contrast, the Philadelphia Civil Service Regulations do impose a time limitation (i.e. one year after resignation in good standing) for reinstatement and provide that reinstated employees must serve a six month probationary period. See Reg. 15.03, Philadelphia Civil Service Regulations. The applicability of Geis to Philadelphia Civil Service Regulations is thus uncertain.

The precedent which defendant cites in support of its allegation that it properly required plaintiff to take a polygraph test as a pre-requisite for reinstatement is equally unconvincing. Defendant relies on Kleschick v. O'Neill, 35 Pa. Commw. 130, 384 A.2d 1370 (1978), for the proposition that the district attorney had broad discretion under Judge Doty's reinstatement order to require plaintiff "to take a polygraph which will indicate his moral fitness for law enforcement work." Defendant's memorandum of law at 9. In fact, the precedent set by Kleschick is much narrower, since there the Com-

monwealth Court held merely that a person seeking reinstatement as a police officer pursuant to a court order could be required to pass a medical examination required by section 9.1411[9] of the Philadelphia Civil Service Regulations for an employee who has been reinstated after an absence of three months or longer from work. Id., 384 A.2d at 1371.

In reaching its conclusion, the Commonwealth Court emphasized that "the regulation in question is clearly applicable to the appellant." Id. In the instant case, in contrast, defendant has failed to cite any clearly applicable civil service regulation that would require plaintiff to take a polygraph test. Moreover, defendant fails to cite any internal regulation of the district attorney's office that would justify the imposition of a polygraph test on plaintiff, but, rather relies on cases which have upheld the dismissal of police officers because of their failure to adhere to particular internal rules of the police department, statutes or the Home Rule Charter. See Fabio v. Civil Service Comm. of Phila., 489 Pa. 309, 414 A.2d 82 (1980) (upholding dismissal of police officer for violating Article I, Section 1.75 of the Philadelphia Police Department Manual); Baker v. City of Pittsburgh, 409 Pa. 143, 185 A.2d 521 (1962) (upholding dismissal of police officer for conduct "unbecoming an officer" as defined by Act of Aug. 10, 1951, P.L. 1189, §7, 53 P.S. §23537 where off-duty police officer was present at illegal gambling club at time of raid); Zeber Appeal, 398 Pa. 35, 156 A.2d 821 (1959) (upholding dismissal of

9. Defendant does concede, however, that plaintiff submitted to a medical re-examination, required by regulation 9.1411 Phila. Civil Service Regulations for all employees seeking reinstatement after a three month absence from work and that plaintiff agreed to a background check. Defendant's memorandum of law at 5.

fireman for failing to timely challenge his suspension for unbecoming conduct as defined by 53 P.S. §23495); Staton v. Civil Service Comm., 1 Pa. Commw. 543, 275 A.2d 716 (1971) (refusing to consider the substantive merits of a police officer's dismissal for just cause under section 7-303 of the Philadelphia Home Rule Charter). These cases cannot be employed to justify the procedural steps which defendant took when he concluded that there was no relevant civil service regulation or internal office policy establishing appropriate reinstatement procedures for plaintiff. In requiring plaintiff to take a polygraph test as a pre-requisite for reinstatement, defendant exceeded his authority under the Civil Service Regulations and Home Rule Charter.

In addition to his petition for enforcement of Judge Doty's June 30, 1981 order, plaintiff also seeks a rule ordering Edward G. Rendell to show why he should not be held in contempt. Courts have the inherent power to enforce compliance with their lawful orders through the imposition of civil contempt. Cahalin v. Goodman, 280 Pa. Super. 228, 421 A.2d 696, 698 (1980). A contempt citation may be civil or criminal, depending on the dominant purpose of the court. The main purpose of a citation for civil contempt is to compel the contemnor to comply with the order so that the interests of a private litigant may be served. Woods v. Dunlop, 461 Pa. 35, 334 A.2d 619, 622 n.2 (1975); Commonwealth v. Novack, 310 Pa. Super. 112, 456 A.2d 208, 210 (1983). A court's power to compel compliance with its orders has well-defined procedural boundaries. Cahalin, supra, 421 A.2d at 698 (the five essential elements to civil contempt adjudication include "(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a

hearing on the contempt citation; and (5) an adjudication of contempt"). See also Nemeth v. Nemeth, 306 Pa. Super. 47, 451 A.2d 1384 (1982). More to the point, the Pennsylvania Superior Court has also emphasized that "a party may not be held in contempt of Court for failing to obey and (sic) civil order that is too vague or that cannot be enforced" since "(a)n order must be sufficiently definite so that the alleged contemnor knows what terms he is violating." Janet D. v. Carros, 240 Pa. Super. 291, 362 A.2d 1060, 1078 (1976). See generally In Re Campolongo, 495 Pa. 627, 435 A.2d 581, 583 n.8 (1981).

In the instant action, the court order of June 30, 1981 remanding plaintiff's case to the personnel director and the district attorney so that they could take "whatever administrative steps are necessary" for reinstatement was ambiguous and did not specify the exact administrative steps which were necessary. It would thus be inappropriate at this time to issue a rule to show cause against defendant since it is far from clear that defendant intentionally violated the June 30, 1981 court order. This ruling is, however, without prejudice to plaintiff's right to petition this court, if and when appropriate, for a rule ordering defendant to show cause why he should not be held in contempt.

We accordingly enter the following

## ORDER

And now, this October 31, 1984, upon consideration of plaintiff's petition for enforcement of an order issued by the Honorable Ethan Allen Doty on June 30, 1981, and citation for contempt, defendant's response thereto and oral argument thereon it is hereby ordered and decreed that this petition is

granted in part and denied in part. It is further ordered that defendant may not premise the reinstatement of plaintiff Robert A. Barrett as a Prosecution Detective I on the taking and passing of a polygraph test. No rule ordering defendant Edward G. Rendell to show cause why he should not be held in contempt will be issued at this time.