456 A.2d 208

COMMONWEALTH ex rel. Goldie NOVACK

v.

**Sheldon NOVACK, Appellant.**

Superior Court of Pennsylvania.

Argued May 11, 1981.

Filed Feb. 4, 1983.

114

Joseph W. Lonergran, Norristown, for appellant.

Marvin L. Wilenzik, Norristown, for appellee.

Before MONTEMURO, HOFFMAN and VAN der VOORT, JJ.

MONTEMURO, Judge:

This case is before the court on appeal from an adjudication of contempt against appellant, Sheldon Novack. The facts of the case are as follows:

Appellant and appellee are husband and wife. Appellee brought a support action against appellant seeking support for herself and two children. At a hearing in July of 1979, before the Honorable William W. Vogel, Judge, Court of Common Pleas, Montgomery County, an order was read into the record which provided for the support of appellee and the two children and the payment of certain sums of money to appellee for medical bills, and reimbursement for medical expenses, and compliance in filing tax return.

On February 21, 1980, appellee filed a petition seeking to have appellant held in contempt for failure to make reimbursement for certain medical expenses, and for committing acts of fraud which had the effect of obligating appellee for debts which appellant had incurred. Appellee also requested reimbursement for attorney's fees and costs which were incurred as a result of appellant's contemptuous behavior. The rule to show cause was issued February 22, 1980, and March 13, 1980 was fixed as the time for the hearing. The Honorable Samuel W. Salus, Judge, Court of Common Pleas, Montgomery County, presided over the contempt

proceedings. The appellant did not appear at the hearing. No answer was filed, but on the day of the hearing, appellant's attorney attempted to file Preliminary Objections. The preliminary objections were denied and appellant was held in contempt of court for failure to appear.

A petition for rehearing was granted so that appellant could present a defense, and the hearing took place on May 6, 1980. Following this, a third hearing took place on May 14, 1980 to show why sanctions should not be imposed. At the end of this hearing, appellant was held in contempt of court and ordered to pay appellee the amount of the medical bills and attorney's fees and costs to purge himself of the contempt.[1]

■ Appellant initially contends that he was deprived of due process because the contempt procedure was improper. The first question to be posed is whether the contempt order was civil or criminal. *Cahalin v. Goodman*, 280 Pa.Super. 228, 421 A.2d 696 (1980). It is evident from the coercive nature of the order that the contempt was civil in nature. In a civil contempt proceeding, five steps are necessary for adjudication:

(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt.

*Cahalin v. Goodman, supra.*

■ It is clear from the previous recitation of the circumstances leading to the contempt adjudication that appellant was afforded the due process required in a civil contempt proceeding.

---

**1.** Appellant was ordered to pay the following: seven hundred dollars ($700.00) to his wife pursuant to Judge Vogel's previous order; two hundred seventy-five dollars ($275.00) which represents the proceeds from checks sent to the appellant, which he converted to his own use; one hundred sixty dollars ($160.00) to his wife for his failure to appear and for her additional expenses; and six hundred dollars ($600.00) for attorney's fees.

■ Appellant next contends that the repayment of medical expenses was simply a collateral agreement and not part of the temporary order issued by Judge Vogel at the support hearing. Appellant reasons that his failure to pay the bills, therefore, should not be the subject of a contempt proceeding, but, at most, a cause of action in *assumpsit.*

A reading of the notes of testimony of the July, 1979 support hearing indicates that Judge Vogel did intend to include the medical expenses in the Order. Judge Vogel merely stated that those obligations would not be present on the computer sheet which listed the $220 per week figure. We therefore find no merit in this contention.

■ Appellant next contends that only Judge Vogel should have been able to hear the contempt proceedings. When this request was made to Judge Salus, the Judge offered to bring in Judge Vogel but appellant's counsel refrained from accepting the offer. This issue is therefore waived.

■ Appellant next contends that because the lower court did not permit any evidence into the record about his financial condition, a finding of willful non-compliance is unjustified. He also argues that the failure to receive evidence about his present ability to pay would effectively preclude him from showing that he could not purge himself of the contempt.

■ In *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977), the Supreme Court stated that the objective of civil contempt was to enforce compliance and not to inflict punishment. Therefore, a court "may not convert a coercive sentence into a punitive one by imposing conditions that a contemnor cannot perform and thereby purge himself of the contempt." *Barrett, id.,* 470 Pa. 262, 368 A.2d at 620. In the case before us, it is clear that the appellant did not comply with the original order. He did not reimburse the appellee for the medical expenses. Furthermore, it should be emphasized that at least a portion of these sums was

actually paid to the appellant by his insurance company,[2] and he simply did not repay the appellee for the money she had already expended. Therefore, the payment didn't technically come out of appellant's earnings. However, the lower court was still obligated to hear testimony regarding the appellant's "present" financial ability to purge himself of the contempt order and failure to accept this evidence constituted error. See *Barrett, supra.*

The appellant finally argues that the lower court committed error in awarding reimbursement for attorney's fees absent any evidence indicating that such expenses were incurred by the appellee. "It is well settled ... that the court may, in a proceeding for criminal contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he [or she] may have sustained by reason of the contumacious conduct of the offender." *Bata v. Central Penn Mutual Bank of Philadelphia,* 448 Pa. 355, 372, 293 A.2d 343, 352 (1972) cert. denied, 409 U.S. 1108, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973) (quoting from *Brocker v. Brocker,* 429 Pa. 513, 520, 241 A.2d 336, 339 (1968). Moreover, it is firmly established that attorney's fees and disbursements necessitated by another party's civil contempt are among the special damages for which recovery may be had. *Bata v. Central Penn Mutual Bank of Philadelphia, supra.*

In order to reconcile this point of law with the *Barrett* objective of enforcing compliance without inflicting punishment, we agree with the appellant that testimony should have been received in regard to this issue. Without such evidence there is no way the lower court could have determined what expenses were incurred and, just as important, whether the appellant was financially able to comply with the order.

For the reasons set forth herein, we remand this case to the lower court to receive testimony regarding the appel-

2. The evidence showed that the insurance company issued the checks in appellant's name. According to Judge Vogel's order, he was to turn the money over to appellee.

lant's financial ability as well as the incurrence and amount of attorney's fees. This court does not retain jurisdiction.