■ John H. Pennock, J.
This is a proceeding instituted under article 78 of the CPLR to review oral examinations taken by the petitioner for the positions of Associate in Secondary Curriculum, Associate in Social Sciences, and Associate in Foreign Areas Studies. Each of the examinations was held on separate dates, and the examiners appointed for the oral tests for Secondary Curriculum and Social Studies were all members of the Department of Education, as admitted by the respondents in their answer, and further, one of the examiners in the Foreign Areas Studies was a member of the Department of Education. *899 All of the positions to which the petitioner aspired were positions within the table of organization of the Education Department.
Basically the petitioner’s objection is that the oral examination should be held by examiners other than those employed in the department where the position is encompassed, secondly the absence of a tape for review and rules for marking. All other points of contention raised by the petition have been disposed of by prior decision of this court. (See Matter of Abo v. Krone, 55 Misc 2d 884).
This court has meticulously reviewed the entire record, including the transcript of the proceedings had in respect to oral examinations as well as listening to the two records, the third record not having any probative value in that the record was unintelligible due to a technical defect in the recording apparatus at the time of the examination.
The petitioner alleges in paragraph “ 12 ” of the petition that, “ 12. That such an examination is illegal since the Department of Education as the appointing officer should not have been allowed to be the testing officer. The result of such a situation is appointment by interview rather than test, and violates the provisions of the State Constitution, Article Y, Section 6, for use of the merit system. This is further demonstrated by the fact that the hiring officer of the Department and the person who would have been the petitioner’s superior officer in the Department were members of the examining panel. ’ ’
This paragraph of the petition pretty well capsules the complaint of the petitioner in respect to .these examinations, to which she was subject and subsequently marked as failing, and she did not receive the appointment to any of the three positions.
Oral competitive examinations may be employed as a test of knowledge and may be used to test other qualities such as ability to deal effectively with others, ability to speak effectively, and ability to reason clearly and to make sound administrative judgments. (Matter of Pearl v. New York State Dept. of Civ. Serv., 8 Misc 2d 712, affd, 5 AD 2d 739, mot. for lv. to app. den. 5 A D 2d 797, app. dsmd. 4 N I 2d 905.) It has also been held that, “ The inability to play back the tape recording * * * is not * * * fatally defective.” (Matter of Fried v. Kaplan, 55 Misc 2d 894, 897.) However, this court sees the necessity for such tapes.
It would seem that the failure of the production of a tape for review purposes would be fatal. In such instance there can be no review or challenge by other examiners of equal ability and experience. (Matter of Young v. Trussel, 42 Misc 2d 108.) Fur *900 ther the deviation of the Civil Service Commission from a written examination places upon it a strict burden of providing an accurate marking system and recordings to sustain the findings and ratings of the oral examiners, otherwise the oral civil service examination procedure would eventually resolve itself into an illusive practice incapable of review and this is precisely the result here.
This court cannot comprehend the fact that the Civil Service Commission has designated the Education Department to hold examinations for open competitive positions within the Department of Education and thus basically phased itself out of a duty imposed upon it by law.
It is true as stated by this court before that,Government civil service positions are no longer limited to the traditional positions adequately filled by a written competitive examination only. Many positions now require special abilities which can only be tested by an oral test.” (Matter of Abo v. Krone, 55 Misc 2d 884, 887 supra.) And further, ‘ ‘ Such abilities or skills are capable of evaluation based on reasonable standards both in public civil service and in private industrial personnel recruitment.” (Matter of Bucalo v. Kaplan, 19 A D 2d 478, 480.) But these holdings of the courts certainly cannot be extended to the situation presented by the case at bar. Here we have representatives in high administrative capacities not only in the very department in which the petitioner seeks employment by way of civil service appointment, but in addition thereto the personnel officer of the department and examiners who may actually be in charge of the division in which the petitioner sought appointment. In fact the petitioner, prior to the oral examination, had worked in the department with two of the examiners, as evidenced at page 4 of the stenographic record of the Examination No. 20-312, Specialist in Education, Associate in Education Research (Social Science) May 6, 1966, at page 4:
Examiner: Have you ever served in a leadership capacity on research committees at any time?
Answer: Unfortunately most of my research experience * * *. A few times when I was with Doctor Crane and Doctor Robertson I was told to get a group together to discuss a matter * * *.
(Court’s Comment: Doctor Crane and Doctor Robertson are the examiners.)
Further at page 11:
Examiner: I think this one is one that content-wise would probably be right up your alley Mrs. Jochnowitz * * *.
(Court’s comment: This necessarily has to be Doctor Crane or Doctor Robertson.) The petitioner had association with both *901 Doctor Crane and Doctor Robertson in her position with the Education Department.
The respondents take the position that the burden is upon the petitioner to prove that the presence of these department examiners in any way prejudiced her.
This court is not of the same opinion. It feels that an examination, whether oral or written, should be objective and above suspicion of bias. It is impossible to hold an objective examination by oral examiners who have had previous association with the examinee, whether the contact was good or bad. Ordinarily it is quite impossible to prove the fairness or the unfairness of a marking when an examination is placed in this posture and certainly any doubt should be resolved in the favor of the candidate. The record does in this particular instance disclose that, on the Associate in Education Research examination for Social Science, the markings on the Part 3 of the examination, on ability to establish good working relations, were marked the lowest rating possible, that is, “wholly indequate”, by one of the Education Department officials, and maked as ‘ ‘ markedly inadequate ” by another Education Department official. Then the personnel representative marked this as “ 7 ” and apparently changed it to a “ 2 ” and reduced his to a failing grade. Therefore, this court makes a finding of fact, based upon the oral test work sheets submitted as pages 7-7, 7-8 and 7-9, that the examiners acted in a capricious manner to the detriment of this examinee in failing the petitioner in that portion of the examination. Section 1 of the same rating sheet shows the petitioner with a grade 9 out of 10 on two of the examiners’ work sheets or marking sheets. In section 2 the petitioner rated 8 out of 10 and thereafter a substantial drop in the section which pertains to ability to establish good working relationships. Even the reading of the transcript and a review and hearing of the available tapes leave no conclusion but that the examiners acted in an unreasonable and capricious manner in the marking of this petitioner in the oral test for Associate in Education (Social Science). A further defect appears on the work sheet for Specialist for Associate in Foreign Areas Studies in that the examination marking sheets are blank in several of the spaces for purposes of comment. This leaves the petitioner without any evidence upon which to proceed on a review and further leaves no conclusion but that the candidate was not fairly rated. The work sheets on the Associate in Secondary Curriculum examination indicate Mr. Daly gave the petitioner a marking under “tact and courtesy” of “excellent”, Mr. Van Hooft under the same *902 “tact and courtesy”, “average”, and Mr. Dwyer, “fair”. There is no tape recording to review this phase of the examination, therefore, no further comment shall be made in respect to the Associate in Secondary Curriculum and a new oral examination should be had.
In the directions to the examiners the instruction sheet states: “All examiners must agree either on a passing rating or on a failing rating for each candidate’s oral test score.” This is a rule which is not acceptable in fairness. Each examiner’s rating should be separate, distinct and thus an interview by selection is avoided.
Another instruction in part is: “ The final criterion which should guide examiners in making their decisions is, basically, whether they would hire the candidate if they were in a position to do so.” (Court’s comment: The examiners are the hiring department.) Let us assume two of the three examiners would hire the candidate and the third refuses to agree. That permits the dissenting examiner to eliminate the candidate.
Preceding this is a direction to the examiners to compare their tentative ratings with respect to wide discrepancies. The insructions require that all records made are to be' made in pencil on a tentative rating for each of the three factors on each work sheet. Apparently the final markings are arrived at by agreement, which is not proper. Preceding this is an instruction that each of the factors on both work sheets should include words that are concrete and explicit descriptions that illustrate the degree of the candidate’s competence in the respective factors. As pointed out by the court, several of the blocks available for such findings were not filled in by the examiners. Thus the criteria of marking are absent. This is not proper.
The interoffice memorandum, Exhibit 5, at page 8, which is the dissection of the appeal by the Civil Service Commission representative, states as follows: “ The fact that an examination is administered by the employing department does not automatically place it in the category of 1 selection by interview ’ further, “ there is no indication that the board members were unable to evaluate Mrs. Jochnowitz objectively, or that any other group of qualified examiners would arrive at any significantly different conclusion”. The court disagrees; this type of interview has to be dispensed with by the Civil Service Commission, as it is contrary to the intent of the Civil Service Law. This oral examination held by appointing departments is pure “window dressing” and although the results may be satisfactory as judged by the respondents, *903 the means are far from satisfactory and do not comply with the Civil Service Law or the Constitution of the State of New York.
Therefore the court determines that the commission acted in an arbitrary and capricious manner in designating the appointing department officials as its examiners in the oral examinations.
Further, that the present rules for marking are arbitrary and capricious and should be amended in such manner that a candidate’s ratings truly reflect the marking and grading of each of the examiners and that an average of the ratings be the criteria for the final grade or that the rules be amended by the commission which shall be consistent with the Bucalo case. (Matter of Bucalo v. Kaplan, 19 A D 2d 478, supra.)
A new oral examination of the petitioner is ordered in all three examinations in accordance with the provisions of this decision.