## Leroy Staton v. Civil Service Commission of the City of Philadelphia.

544

Argued February 11, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and ROGERS.

*Mary Bell Hammerman*, for appellant.

*Matthew W. Bullock, Jr.*, First Deputy City Solicitor, with him *Levy Anderson*, City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, April 5, 1971:

This appeal is from an order of the Court of Common Pleas of Philadelphia County, affirming a decision of the Civil Service Commission of the City of Philadelphia. The Commission upheld appellant's dismissal from his position as a police officer.

Section 7-201 of the Philadelphia Home Rule Charter authorizes appeals to the Civil Service Commission and provides in part as follows: "Findings and decisions of the Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds." The validity and effect of this provision of the Charter were passed upon by the Supreme Court in *Addison Case*, 385 Pa. 48, 122 A. 2d 272 (1956); appeal dismissed, 352 U.S. 956, 77 S. Ct. 353, 1 L. ed. 2d 316. Section 7-201 was there held to be constitutional and its effect to be that appellate review is limited to questions of jurisdiction and the regularity of the proceedings. The merits of the controversy will not be considered by the reviewing court. These holdings, with the narrow exceptions hereafter noted, have been followed in numerous cases involving not only the Philadelphia Home Rule Charter but other legislation of similar import. *Swank, Appellant v. Myers*, 386 Pa. 331, 126 A. 2d 267 (1956); *Raby v. Board of Finance and Revenue*, 405 Pa. 495, 176 A. 2d 661 (1961); *Lowry v. General Waterworks*, 406 Pa. 152, 77 A. 2d 82 (1962); *O'Gorman Appeal*, 409 Pa. 571, 187 A. 2d 581 (1963); *Penn Wynne et al. v. Lower Merion Township*, 181 Pa. Super. 524, 124 A. 2d 487 (1956).

The exceptions to the general rule that only jurisdiction and the regularity of the proceedings are subject to judicial scrutiny are, first, where the adminis-

trative agency has exceeded the powers possessed by it and, second, where individual rights or property rights ordained or guaranteed by the Federal or State Constitution have been violated by the administrative agency or the lower court. *DeVito v. Civil Service Commission*, 404 Pa. 354, 172 A. 2d 161 (1961).

Here, appellant raises no question as to jurisdiction or the regularity of the proceedings[1] nor does he contend that his constitutional rights have been violated. His sole contention is that his admitted transgressions of required standards of conduct did not justify the Commission's conclusion that his dismissal was for just cause and that therefore the Commission exceeded its powers in upholding his dismissal. Such reasoning if accepted would entirely nullify the general rule in this type of case and must be firmly rejected.

Nevertheless, we will make brief comment on appellant's contention.

Section 7-303 of the Philadelphia Home Rule Charter provides: "*Dismissal, Demotion and Suspension*— Any dismissal or demotion after the completion of the required probationary period of service, or suspension of any employee in the civil service shall be for just cause only." On August 19, 1966, while in uniform and off duty, the appellant went to a neighborhood bar, became embroiled in an argument with a 60-year-old man and struck the man in the face with such force as to knock him to the floor. Thereafter, the victim of appellant's assault was arrested on the street outside the bar with a rifle in his hands. Appellant claims to

---

[1] A full recital of the earlier history (and facts) of this matter is to be found in *Staton Appeal*, 47 D. & C. 2d 657 (1969), wherein the Common Pleas Court remanded the case to the Commission because of procedural irregularities. The instant appeal is from a decision of the Court of Common Pleas dismissing an appeal from the Commission's action after the remand hearing.

have been motivated in his attack by an alleged remark of a highly inflammatory nature.

In *O'Gorman Appeal, supra,* Mr. Justice O'BRIEN noted with approval the following language concerning cause for dismissal: "All that the law requires is that the cause be concerned solely with the inefficiency, adequacy or misconduct of the employe. A wide latitude must be left to the superior officer—in fact a discretion conditioned only on its exercise in good faith and not a screen for some reason not based upon the fitness of the employe to fill the position." 409 Pa. 571, 576, 187 A. 2d 581, 583 (1963).

Attached to appellant's brief is a letter from the Police Commissioner to the Civil Service Commission which is in part as follows: "I agree . . . that the presence of the officer in a bar in full uniform purchasing alcoholic beverages, indicates his lack of regard for departmental rules and regulations. Further, that the striking of an obviously intoxicated man 60 years old casts doubt on the qualifications of the accused to react under duress or pressure. In today's society, one of the most important, if not the most important, principle of police-community relations is that every police officer must maintain control over his emotions and cannot permit his personal feelings to override his self-control or good judgment. This principle was clearly violated by Officer Staton, and I cannot accept his contention minimizing the seriousness of the incident. As pointed out . . . were it not for the speedy response by the police and the taking into custody of Mr. Dewberry, armed with a rifle, the results of the incident could have been much more serious. The community is certainly entitled to forthright action to prevent the recurrence of incidents such as this one."

The cases relied on by appellant as support for his contention that if upon an examination of this record

we should find that appellant was not guilty of each violation of police department regulations with which he was charged, we should conclude that the Commission had no authority to uphold this dismissal, are inapposite. *DeVito v. Civil Service Commission, supra,* held only that the Commission exceeded its power in upholding the dismissal of a police officer for the sole reason that he refused to take a lie detector test and *O'Peil v. Pennsylvania State Civil Service Commission,* 424 Pa. 151, 225 A. 2d 546 (1967) held only that the State Civil Service Commission exceeded its power in dismissing an appeal where the *only evidence* before it was the employe's testimony that he had been dismissed for political reasons. In *Beard v. Pennsylvania State Civil Service Commission,* 424 Pa. 146, 225 A. 2d 543 (1967), decided the same day as *O'Peil,* it was held that unless the proceedings themselves, as opposed to the finding, show on their face that the Commission's order is arbitrary or capricious, we should affirm, "regardless of our own personal beliefs as to their correctness." 424 Pa. 148, 149, 225 A. 2d 543, 545 (1967).

Since there were no jurisdictional or procedural errors in the proceedings and the Commission plainly acted within its powers, the court below properly dismissed the appeal.

Order affirmed.

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent. Leroy Staton was dismissed from the Philadelphia Police Department for several charges which were lodged against him. Staton admits that he committed several wrongs in connection with his duties as a police officer. As the majority states, however, Staton claims that his transgressions did not justify the Commission's conclusion that his dismissal was for *just cause.*

We agree with the majority that this court is not to reevaluate the evidence involved in the substantive offenses. Indeed, Staton raises no question on this appeal concerning the wrongs which he committed.

The difficulty in this case begins when we focus directly on the question which Staton has raised before this court. Was his dismissal from the police force for *just cause*? The Philadelphia Home Rule Charter permits a dismissal as well as other disciplines for *just cause*. After the proper authority has dismissed for *just cause*, the employee is entitled to a hearing before the Civil Service Commission and it is the Commission's duty to determine whether or not the dismissal was for *just cause*. What constitutes *just cause*? The term is not defined in the Philadelphia Home Rule Charter. If punishment can be imposed on an individual for *just cause* and no definition of *just cause* is provided, I fail to understand how any reviewing tribunal can determine whether or not the dismissal of an employee was for *just cause*.

Without even some broad guideline or definition, *just cause* must be determined after the fact. Thus, an employee would not know until after engaging in certain conduct whether or not the consequences of his conduct might result in dismissal. This case is difficult because Staton's conduct may have warranted dismissal had there been proper notice before the fact of the consequences of his conduct. An employee in a civil service classification has a protected status. To say that he loses the protected status and can be dismissed for *just cause* without providing specificity in advance as a warning to the employee as to what will constitute *just cause* leaves a wide open door for lack of uniformity and lack of uniform application of treatment to employees. Will all employees who commit the same wrongs be dismissed? There is no rule or

regulation which mandates the same result in another case.

Staton had no idea of what penalty would be imposed for his wrongdoing until after the wrongful act had been accomplished. It is fundamental to the concept of justice and fairness that one be warned of the consequences of his action before the actions are performed. The concept of an *ex post facto* law must be considered when the very severe punishment of dismissal can be the consequences of an individual's conduct. A law or the act of an authorized person which increases the punishment or which in relation to the offense or its consequences alters the situation of a party to his disadvantage has never been condoned by our judicial system. Unless prior standards have been established clearly setting forth conduct which will result in dismissal or other discipline, the employee cannot be deprived of his civil service protection.

When Staton complains to this court that the Civil Service Commission exceeded its authority by finding *just cause*, we are left with a vacuum in our search for a guiding standard by which it can be determined whether or not he was dismissed for *just cause*.

The lack of controlling standards by which the Commission can make its determination leads only to pure speculation as to any future trends of action. Due process of law cannot condone such vagueness and courts when reviewing decisions of agencies must not condone it.

There is in this case a police duty manual which does set up guidelines of conduct for members of the police force and does give notice to members of the force as to specific conduct which can result in specific disciplines. This manual was not binding on the appointing authority, however. If such guidelines are not binding, the appointing authority has complete dis-

cretion to determine what penalty to impose for what offenses. How then is the Civil Service Commission to determine when the cause was just and when it was not? Such procedure can also mean that employees engaging in similar conduct could be given different penalties and thus denied uniform treatment. We note that the Philadelphia Home Rule Charter specifically states as one of the purposes in establishing the Civil Service and the Civil Service Commission is to establish "scientific methods governing the appointment, promotion, demotion, transfer, lay-off, removal and discipline of its employees. . . ." No scientific method exists unless conduct which will be considered *just cause* for disciplinary action is known in advance.

We note also that if the guidelines that are contained in the Philadelphia Police Duty Manual were followed, *just cause* would not have warranted dismissal under the existing department guidelines unless his conduct involved a crime of moral turpitude. We cannot find that Staton's conduct involved a crime of moral turpitude. There is no fraud involved in the conduct of the employee. His conduct did not involve any crime of grave character. It was not a crime replete with baseness, vileness, shamefulness, wickedness, or depravity. The foregoing are some of the adjectives used to define a crime of moral turpitude. Indeed it is highly questionable whether such a guideline itself could stand the test of constitutionality. Moral turpitude is one of the often repeated cliches of a bygone era which we find difficult to grasp and comprehend as being useful in determining and describing the conduct of an individual which will warrant certain consequences. If we face the term candidly, does it say anything more than "awfully bad" or "shamefully bad"?

Even if we assume, however, that the term "crime of moral turpitude" has meaning and that dismissal was

warranted for such a crime under the Philadelphia Police Duty Manual, the simple fact of the matter is that Staton engaged in no conduct which involved a crime of moral turpitude.

The incident which arose from Leroy Staton's action on August 19, 1966, was an unfortunate one. The well-being of the City of Philadelphia demands a police force which obeys regulations and responds rationally in the face of pressure. Leroy Staton disobeyed several regulations required of all policemen on the force and reacted hastily and unfortunately in the face of pressure. However, none of his actions warrant dismissal from his job so far as pre-announced standards were concerned. I would remand this case for revision of the penalty in accordance with the guidelines provided in the duty manual of the Philadelphia Police Department. Such guidelines were not controlling, but they were announced and promulgated—a rudimentary requirement of fundamental fairness.