**Rainey GREEN, Appellant,**

v.

**CIVIL SERVICE COMMISSION.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 1997.

Decided Feb. 4, 1998.

**2.** 18 Pa.C.S. §§ 101–9183.

Michael S. Durst, Philadelphia, for appellant.

Mark R. Zecca, Philadelphia, for appellee.

Before COLINS, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

COLINS, President Judge.

Before this Court is the appeal of Rainey Green (Green) from the decision of the Court of Common Pleas of Philadelphia County that affirmed the decision of the Philadelphia Civil Service Commission (Commission) denying Green's appeal of his disqualification by an oral test board. We affirm.

Green, along with thirty-seven other individuals, took a civil service examination for a supervisory position with the City of Philadelphia's Office of Fleet Management (Fleet Management). Although there were written and oral components to the test, the overall test score was weighted heavily toward an oral examination, which consisted of four questions. These questions were prepared, presented, and graded by persons selected by the City's Personnel Department (Personnel Department). The Personnel Department is independent of Fleet Management, and it served as a neutral referee in the preparation and administration of the civil service examination in question here.

An oral test board disqualified Green for the supervisor position because he failed the oral examination. Green appealed this disqualification to the Commission pursuant to Philadelphia Civil Service Regulation 9.11,[1] contending that the fourth question of the oral examination was unfair because the question gave Caucasian employees an advantage over African American employees.[2] According to Green, Fleet Management intentionally afforded Caucasian employees more on-the-job training relevant to the question asked (i.e., more experience as acting supervisors), and as a result, better prepared them to answer the question. Conversely, Fleet Management purposely denied African American employees the same experience in order to discriminate against them in the promotion process by placing them at a distinct disadvantage on the oral examination.

At hearings before the Commission, the City established that the Personnel Department, not Fleet Management, was ultimately responsible for preparing and grading the questions on the oral examination and that all of the applicants were given the same study materials, which contained the information necessary to answer the questions. (N.T. 7/30/96 at 53–59.) The City also demonstrated that of the twenty-six persons who passed the exam, only thirteen were acting supervisors. (N.T. 7/30/96 at 72.) In other words, only half of the successful applicants were privy to the on-the-job experience that Green claims was necessary to answer question four. Moreover, the City showed that two of the four African Americans who took the test passed, and of these two, one was not an acting supervisor. (N.T. 7/30/96 at 72.) Based upon these findings, the Commission denied Green's appeal stating that he had failed to carry the burden of proving that there was bias in the actual conduct of the oral examination. We agree.

On appeal to this court, Green makes two arguments.[3] First, Green argues that the

1. Civil Service Regulation 9.11 is entitled: "Appeal From Disqualification by Oral Test Board." It reads, in pertinent part:

   Within thirty (30) calendar days immediately after the date of mailing to the competitor of the official notice of examination results ... a competitor given a failing score on an oral test may appeal to the Commission *upon the grounds of irregularity, bias, or fraud in the conduct of the oral test.* If, after conducting a hearing, the Commission finds that the competitor's rating in the oral test was the result of irregularity, bias, or fraud, it shall certify to the Director that the competitor is entitled to a

reexamination or that the competitor is to be awarded a minimum passing score.
(Emphasis added.)

2. The question was:

   The Bureau of Quality Control Assurance wants you to identify performance indicators; can you create a quality assurance center and identify what you consider to be performance indicators?

3. Our scope of review where the trial court has limited itself to the record before the Commission is restricted to a determination of whether

Commission and the Court of Common Pleas erred as a matter of law by placing the burden of proof on him and by disregarding evidence he presented that established bias in the oral examination. In support of this argument, Green submits that the Commission's inquiry into the alleged racial bias in the oral examination should have implicated a shifting evidentiary standard analogous to that used in an examination of disparate treatment cases brought pursuant to the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–742.4, and the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2. Green believes that he should have been required only to come forth with a prima facie case of discrimination (which he claims he did), and that the burden of proof should then have shifted to the City to rebut the presumption of discrimination. Second, Green argues that the Court of Common Pleas made a procedural error by issuing an opinion affirming the Commission's order without considering the full record from the Commission's hearings. We find neither of these arguments persuasive.

Green's first argument misinterprets the grounds for appeal afforded by Civil Service Regulation 9.11 and distorts the remedial powers given to the Commission under the regulation. Regulation 9.11 allows for the right of appeal from a disqualification by an oral test board "upon the grounds of irregularity, bias, or fraud in the *conduct of the oral test.*" (Emphasis added.) The regulation is properly read to give the right of appeal to a person upon the grounds that

the Commission's order violated an employee's constitutional rights, whether the Commission manifestly abused its discretion or committed and error of law, or whether the Commission's decision was not based upon substantial evidence. *Haygood v. Civil Serv. Comm'n.,* 133 Pa. Cmwlth. 517, 576 A.2d 1184 (1990).

4. For example, if one group of applicants was allowed to consult notes, while another group was precluded from doing so, the regulation would quite clearly afford a remedy. Obviously, in this instance, the oral examination would not have been administered fairly.

Another example would be when the test was prepared in a manner that would give a certain group a distinct advantage on the test that was unrelated to their ability to perform the duties of

there was some inequity in the preparation or administration of the test itself.[4] Essentially, the regulation is intended to ensure that every applicant should be given the oral examination in the same manner in order to guarantee fairness in the testing process.

In the present case, Green does not argue that the administration of the oral examination was different with respect to any particular group of persons, or that it was prepared in a manner that would favor Caucasians. Instead he contends that the bias of the test is seen in the divergent levels of experience possessed by African American employees and Caucasian employees. Mistakenly, Green challenges the fairness of the Personnel Department's preparation and administration of the oral examination by alleging purposeful discrimination by Fleet Management. This argument plainly misses the mark because any alleged misconduct by Fleet Management would be independent of the preparation and administration of the test by the Personnel Department. The Personnel Department cannot be charged with bias in "the conduct of an oral test" because of alleged discrimination in Fleet Management. Likewise, Fleet Management cannot be charged with bias in the "conduct of an oral test" when it was not responsible for the preparation or administration of the oral test.

Green incorrectly challenges the fairness of the oral examination, when in fact his real target is the alleged practice by Fleet Management of giving Caucasian individuals access to on-the-job training to the detriment of African Americans. Surely, it would be

the position for which they were being tested. For instance, if the test was given in Spanish to favor certain individuals, even though Spanish language skills were not needed to perform the job for which the test was administered, this test clearly would not have been prepared fairly.

On the other hand, if the job required a level of proficiency in Spanish, it would be improper to say that the test unfairly favored those brought up in Spanish-speaking households simply because they have more experience speaking Spanish. Different people bring variable skills and experience into the workforce. Civil service examinations should be designed to fairly assess the applicants' varying skills and experiences appropriate for the prospective position.

illegal for Fleet Management to intentionally provide Caucasian employees access to on-the-job training knowing that it would disadvantage African American employees on the oral examination, but the remedy to this alleged illegal behavior is outside of the purview of Regulation 9.11. The Commission is permitted under Regulation 9.11 to remedy bias in an oral test by allowing for a reexamination or by giving the harmed applicant the minimum passing score. This is hardly the appropriate remedy for the egregious racial discrimination alleged by Green.

It is indeed telling that Green characterizes his argument in terms of "disparate treatment," a term of art used in case law addressing federal and state employment discrimination statutes designed to combat the type of behavior Green alleges here. *See generally Winn v. Trans World Airlines, Inc.*, 506 Pa. 138, 154, 484 A.2d 392, 400 (1984) (per curiam) (Larsen, J., opinion in support of affirmance) (borrowing the Supreme Court's definition of "disparate treatment" in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin)); *see also General Elec. Corp. v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976) (discussing shifting evidentiary burden used in federal courts in cases brought pursuant to Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and applying same burden to case brought pursuant to Pennsylvania Human Relations Act; *Dept. of Health v. Nwogwugwu*, 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991) (applying shifting evidentiary standard to case brought pursuant to Civil Service Act). We find no justification for labeling the present case a disparate treatment case or for implicating a shifting evidentiary burden as seen in disparate treatment case law. The scope and purpose of Regulation 9.11 are much narrower than that of the federal and state employment discrimination statutes from which this shifting evidentiary standard has emerged. Green may have his avenues to challenge the promotional practices of Fleet Management in these statutes, and the shifting evidentiary burden should be appropriately limited to those broader causes of action.

In addition to applying the proper standard of proof, the Commission also correctly found that Green failed to establish bias in the actual conduct of the exam. The record simply does not support Green's claim that the Commission disregarded evidence that established bias in the oral examination. In fact, we would be remiss if we did not at least mention our belief that Green's allegations were speculative at best, and in any event, completely undermined by the statistical evidence presented by the City as detailed above.

Now to briefly address Green's second argument, we believe that it is sufficient to state that the trial court properly reviewed the briefs and record prior to reaching its decision. In our review of the Court of Common Pleas' opinion, we have found that it was cognizant of, and relied on, the same statistical findings that the Commission did, and which we discussed previously. The decision was well reasoned and consistent with our independent review of the record.

In summation, we hold that the Commission correctly placed the burden of proof on Green and properly found that Green failed to prove that there was bias in the conduct in the oral exam. Furthermore, we believe that the Court of Common Pleas suitably reviewed the record prior to affirming the Commission's decision.

Accordingly, the decision of the Court of Common Pleas of Philadelphia County is affirmed.

### ORDER

**AND NOW**, this 4th day of February, 1998, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.