William GAFFNEY, Warren Faison, and Mingo Isaac, Appellants,

v.

CITY OF PHILADELPHIA and Civil Service Commission

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1998.

Filed April 29, 1999.

Alaine S. Williams, Philadelphia, for appellants.

Jane L. Istvan, Philadelphia, for appellee.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

In 1992, Philadelphia firefighters William Gaffney, Warren Faison and Mingo Isaac (firefighters), took the promotion examination for lieutenant. After failing to merit placement on the eligibility list, they filed separate appeals with the Philadelphia Civil Service Commission (Commission) contending that they received failing scores de-

spite having given correct answers.[1] According to the firefighters, this irregularity in scoring was that the panel rating the responses was composed of fire department personnel from out-of-town who were not familiar with Philadelphia policies and procedures. Two of the three Commissioners found no irregularity in the examination, having concluded that the firefighters failed to establish the occurrence of anything extraordinary in the examination process. Following oral argument in the firefighters' appeal, the Philadelphia Court of Common Pleas (trial court) held that the Commission's finding of no irregularity was not supported by substantial evidence. The trial court found that, "these firemen were penalized, so to speak, for giving correct answers because their testers were ignorant of Phila. Fire Dep't procedures." *Gaffney, Faison & Isaac v. CSC* (Nos. 9312–2104, 9312–2106, 9312–2107, Order dated September 24, 1994). The trial court reversed and remanded for further findings as to whether the irregularity caused the failing grade. On remand, the Commission reiterated its finding that no irregularity occurred. The Commission also noted that the passage of the two year period for the validity of the eligibility list rendered the action moot. (Order, April 24, 1997). Firefighters filed a second appeal in the trial court. On December 18, 1997, the trial court dismissed this second appeal as moot. The trial court reasoned that, pursuant to the decision in *Walls v. City of Philadelphia*, 165 Pa.Cmwlth. 174, 646 A.2d 592 (1994), *alloc. denied*, 540 Pa. 625, 657 A.2d 494 (1995), holding that there could be no extension of a promotion list beyond two years, the firefighters' only remedy was unavailable and, therefore, the matter was moot. Firefight-

---

1. The appeals, now consolidated, were taken pursuant to Civil Service Regulation 9.11, which states as follows:

    APPEAL FROM DISQUALIFICATION BY ORAL TEST BOARD. Within thirty (30) calendar days immediately after the date of mailing to the competitor of the official notice of examination results (or a shorter period of not less than seven (7) days, if necessary for the good of the service and announced to the competitors in the notice of examination results) a competitor given a failing score on an oral test may appeal to the Commission upon the

grounds of irregularity, bias, or fraud in the conduct of the oral test. Such appeal shall be in writing and shall contain a statement of bases and proofs. Issues related to the suitability or adequacy of point scores awarded to passers are not appealable to the Commission. If, after conducting a hearing, the Commission finds that the competitor's rating in the oral test was the result of irregularity, bias, or fraud, it shall certify to the Director that the competitor is entitled to a re-examination or that the competitor is to be awarded a minimum passing score.

ers filed the instant appeal.[2] They contend that dismissal on the ground of mootness deprives them of a meaningful opportunity to protect their property interest in placement on the list and that to protect this constitutional interest the eligibility list must be extended beyond the two-year statutory period. We disagree.

In *Walls*, this court held that a promotion list cannot be extended by agreement or by the order of a court because:

> The legislature has spoken on this issue quite clearly. Section 13 of the Act of June 25, 1919, P.L. 581, *as amended*, 53 P.S. § 12633, provides:
>
>> The commission shall adopt, amend, and enforce rules for the classified service, which shall have the force and effect of law. The rules shall provide:
>>
>> . . . .
>>
>> 3. For the creation of eligible lists, upon which shall be entered the names of successful candidates in the order of their standing in examination. *Such list shall remain in force not longer than two years.* (Emphasis added)
>
> Accordingly, the Philadelphia Home Rule Charter provides:
>
>> The establishment of eligible lists for appointment and promotion, upon which lists shall be placed the names of successful candidates in the order of the relative excellence in the respective examinations. Such lists shall continue in force for at least one year from the date of their establishment and thereafter until exhausted or replaced by more recently prepared lists *but in no case longer than two years . . . .*
>
> 351 Pa.Code § 7.7–401(f) (emphasis added). And, pursuant to the Home Rule Charter, regulations have been promulgated which provide:
>
>> Open competitive and promotional lists, established as the result of non-continuous or periodic examinations, shall continue in force for at least one year from the date of establishment thereof and thereafter until exhausted or replaced, *but in no case longer than two years.*
>
> Philadelphia Civil Service Regulation § 10.071 (emphasis added). There are *no* provisions in the preceding statute and regulations for exceptions to this two year life span.

*Walls*, 646 A.2d at 595.[3]

█ The only relief authorized for an exam irregularity is certification to be re-

---

2. Section 7–201 of the Philadelphia Home Rule Charter provides that appellate review of the decisions of the Commission is limited to questions of jurisdiction and the regularity of the proceedings. Caselaw has extended this scope of review to include whether the commission exceeded its authority or violated a guaranteed constitutional right. *Staton v. Civil Service Comm'n*, 1 Pa.Cmwlth. 543, 275 A.2d 716 (1971). *See also Weeks v. Civil Service Comm'n*, 89 Pa. Cmwlth. 556, 492 A.2d 1194, 1195 (1985). *Cf. In re Blystone*, 144 Pa.Cmwlth. 27, 600 A.2d 672, 673 n. 2 (1991), *alloc. denied*, 534 Pa. 641, 626 A.2d 1159 (1993) (distinguishing the limited scope of review under Section 7.7–201 from the more expansive *de novo* review available under Section 1191 of the Borough Code, 53 P.S. § 46191). We note that Section 7.7–201 explicitly provides for appeals from dismissal, demotion or suspension and does not contain language referring to appeals from decisions on a challenge to a promotional exam. Nevertheless, in *Weeks*, a case involving a challenge to the oral exam for promotion to Fire Department Battalion Chief, this court applied the standard of review under Section 7.7–201. 492 A.2d at 1195.

3. Firefighters cannot avoid the expiration of the eligibility list on the basis of the holding in *Commonwealth v. O'Neill*, 100 F.R.D. 354 (E.D.Pa. 1983), *aff'd*, 746 F.2d 1465 (3d Cir.1984). In *O'Neill*, the court approved the extension of an eligibility list as part of a consent decree settling an action, under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*, to remedy racial discrimination in the hiring and promotional practices of the Philadelphia Police Department. The statutory prohibition was obviously not argued as a bar to the relief ordered since it was entered by agreement, so no inference may be drawn that the district court considered, let alone rejected, the statutory bar. Moreover, this court, in *Walls*, distinguished the ruling in *O'Neill* on the ground that in the federal civil rights action, the extension of the civil service eligibility list was justified by the "overriding federal policy of remedying racial discrimination." *Walls*, 646 A.2d at 596, n. 3. Such justification does not exist in a challenge to the administration of the oral exam based on irregularity, bias, and fraud under Philadelphia Civil Service Regulation 9.11. *Id.*

examined or the award of a passing score.[4] *See* Philadelphia Civil Service Regulation 9.11. Both remedies become meaningless where the eligibility list has expired. The 1992 list, for which firefighters had tested, expired in July of 1994, some two months before the first trial court decision, dated September 22, 1994. Even if an irregularity occurred in the 1992 exam, the 1992 promotion list had long since expired by the time the matter came up for re-hearing in 1997. Accordingly, we agree with the trial court that, in the absence of an available remedy, a decision on firefighters' challenge to the oral exam has no practical effect, and thus their challenge ordinarily would be subject to dismissal as moot. *In re T.J.*, 699 A.2d 1311, 1313–14 (Pa.Super.1997), *alloc. granted*, 555 Pa. 705, 723 A.2d 673 (1998); *Cytemp Specialty Steel Div., Cyclops Corp. v. Public Utility Comm'n*, 128 Pa.Cmwlth. 349, 563 A.2d 593, 596 (1989); *Scanlon v. Mt. Union Area Bd. of Sch. Dirs.*, 47 Pa.Cmwlth. 409, 408 A.2d 555, 558 (1979), *aff'd*, 499 Pa. 215, 452 A.2d 1016 (1982). However, where the conduct complained of is capable of repetition yet apt to evade review, or the case involves questions important to the public interest, courts may decide the issue even if the present controversy is technically moot. *Daly v. Horse Racing Comm'n*, 38 Pa. Cmwlth. 77, 391 A.2d 1134, 1136 (1978).

The two-year life span of the eligibility list affords insufficient time for a case, such as the present one, to receive appellate review before the matter is mooted by the lack of an available remedy. Hence the question raised in the instant case is one that is likely to recur yet evade our review. Further, the testing process for qualifying fire department lieutenants is a matter of important public interest. Therefore, the question as to whether the use of out-of-town raters to score the oral portion of the exam produced an irregularity falls within the exception to the general rule calling for dismissal.

■ In general, promotional exams must be impartial, practical and deal with the duties and requirements of the position to be filled. Section 14 of the Act of June 25, 1919, P.L. 581, *as amended*, 53 P.S. § 12634(Act);[5] 351 Pa.Code § 7.7–401;[6] Philadelphia Civil Service Regulation 9.012.[7] *See Green v. Civil Service Comm'n*, 706 A.2d 905, 907 n. 4 (Pa.Cmwlth.1998) (listing examples of inequity in testing). The use of out-of-town raters to grade the oral portion of a promotional exam is a practice permitted by the statute that regulates civil service in Philadelphia and the Philadelphia Home Rule Charter. Section 14 of the Act of June 25, 1919, P.L. 581, *as amended*, 53 P.S. § 12634, provides, in part, that: "The commission may call on other persons, either within or without the city service, to draw up, conduct, or mark examinations...." The Home Rule Charter provides that "[t]he Personnel Director shall designate appropriate persons to assist in the preparation and rating of tests." 351 Pa. Code § 7.7–102. The use of out-of-town raters has been adopted in Philadelphia and in other cities in order to avoid bias or the appearance thereof that may arise when the grading is performed by personnel who may be familiar with particular competitors. *See Jochnowitz v. Poston*, 55 Misc.2d 898, 287 N.Y.S.2d 286, 290 (1968) ("It is impossible to hold an objective examination by oral examiners who have had previous association with

4. In their appeal of the Commission's April 24, 1997 decision, firefighters request promotions to positions as lieutenants and back pay retroactive to the date of the last promotion from the 1992 list. We are aware of no authority for this relief and believe such relief would be inappropriate in that it would put firefighters in a better position than they would necessarily have been in if they had passed the test. *Trosky v. Civil Service Comm'n*, 539 Pa. 356, 652 A.2d 813 (1995).

5. Section 14 of the Act, regulating the civil service in cities of the first class, states, in relevant part: "All examinations shall be free, and impartial, practical in their character, and shall deal

with the duties and requirements of the position to be filled."

6. Under the Philadelphia Home Rule Charter the Personnel Director must prepare regulations providing for, in relevant part: "Open competitive examinations to test the relative fitness of applicants for the respective positions." 351 Pa.Code § 7.7–401(c).

7. Philadelphia Civil Service Regulation 9.012 provides that "[e]very examination for positions within the Civil Services shall be competitive, uniform, and shall be designed to measure fairly the relative qualifications of competitors."

the examinee, whether the contact was good or bad."). *See also Civil Service Comm'n v. Frazzini,* 132 Colo. 21, 287 P.2d 433, 435 (1955) (listing among board of examiners for Denver fire department exam fire chiefs from San Francisco and from Portland, Oregon). There is nothing inappropriate per se about the use of out-of-town raters so long as the raters are competent to assess the qualities being tested and the competitors' responses are judged according to objective standards reasonably calculated to assess job related attributes.

The purpose of the oral portion of the lieutenant's exam, articulated by Linda Robinson, Chief of the Test Development Unit, was to test a competitor's creativity and leadership, attributes that could not be adequately tested on the written exam. Robinson further testified that to achieve this purpose, questions were designed, in consultation with out-of-town fire department officers, to elicit generic responses rather than answers focused on specific local procedure. In order to keep the raters focused on the attributes being tested, the Philadelphia Fire Department took measures to alleviate potential confusion over local procedure and to avoid misplaced analysis during the grading. The department informed the raters about local policy and procedure by providing, for their review, local manuals and memoranda that contained specific information concerning alarm sequences, the definitions for a "tactical box" and a Fire Department organizational chart. The raters also received benchmark responses to the questions. Competitors were at liberty to discuss and clarify points of local procedure where such points may have affected their responses. This process yielded an 80% pass rate, which belies the contention that grading was skewed by misunderstood points of local procedure.

The firefighters' contend that they received failing grades despite having stated answers that were technically correct under local procedure. Given that the oral test did not assess specific knowledge of local procedure, their focus in this respect is misplaced. Considering the attributes the oral test sought to assess, a competitor could enunciate a technically correct point of local procedure but nonetheless fail the oral exam because the answer given failed to demonstrate a sufficient level of analysis, creativity and leadership. Our review of the record reveals ample evidence to support the Commission's conclusion that the firefighters had not established an irregularity in the use of out-of-town raters nor in the specific grading of their exams.

Therefore, the order of the court of common pleas is affirmed.[8]

### O R D E R

AND NOW, this 29th day of April, 1999, the order of the Court of Common Pleas of Philadelphia County, dated December 18, 1997, in the above captioned matter is hereby affirmed.

---

**8.** While the trial court *dismissed* the appeal rather than *affirming* the order of the Commission, the practical effect is the same; to leave in place the Commission's order of April 24, 1997. Thus, we see no need to vacate common pleas' order simply to amend its form.