J. S36017/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

TINA M. SWINN                    :      IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
                                 :
              v.                 :
                                 :
JOHN A. SWINN                    :
                                 :
              Appellant          :      No. 1500 MDA 2015

Appeal from the Order Entered July 8, 2015
In the Court of Common Pleas of Cumberland County
Civil Division No(s): 2010-03617 PACSES 69112078

BEFORE: MUNDY, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                          **FILED JUNE 16, 2016**

Appellant, John A. Swinn, appeals from the Order entered in the Cumberland County Court of Common Pleas on July 8, 2015, which held Appellant in contempt in this divorce action. The Order sentenced Appellant to a period of two to six months' incarceration, as well as to pay the costs of prosecution and a $100 fine. The court also ordered that Appellant could purge his contempt by paying $12,400 to Appellee, Tina M. Swinn, and ordered Appellant to comply with the terms of the court's September 30, 2013 equitable distribution Order. We affirm.

The relevant facts and procedural history is as follows. Appellee filed a Complaint in Divorce on June 2, 2010.[1] In a September 30, 2013 Order, the

---

[*] Former Justice specially assigned to the Superior Court.

court ordered equitable distribution of the marital assets pursuant to the terms of the Divorce Master's March 15, 2013 Report ("Master's Report"). Relevant to the instant matter, the Master concluded that a portion of money held in a Fidelity 401k account in Appellant's name was marital property. As a result of this finding, the court awarded Appellee $12,400 from the Fidelity 401k account.

The parties were repeatedly unable, and often unwilling, to cooperate with each other to effectuate distribution of the marital assets. By agreement, the parties were to meet on September 27, 2014, to transfer property pursuant to the September 30, 2013 Order. Nevertheless, on that date, Appellant refused to transfer the property as previously ordered.

On December 18, 2014, Appellee filed a Motion for Injunctive Relief seeking to prevent Appellant from dissipating the assets in the Fidelity 401k account. In January 2015, the trial court entered an order requiring Appellant to provide written proof that the account was intact.[2] Appellant did not comply with this Order.

On January 23, 2015, the court held a hearing on several of the parties' motions, including the Motion for Injunctive Relief and cross-Motions

---

[1] The trial court entered a divorce decree on January 2, 2014.

[2] The trial court docket reflects entry of an order matching this description on January 12, 2015, however this order does not appear in the record.

for Contempt of the court's equitable distribution Order.[3]  At the hearing, the court heard testimony that Appellant was unwilling to move forward with equitable distribution on September 27, 2014.  Appellee testified that she appeared for the exchange, but Appellant claimed that the distribution could not take place because he had filed a Motion for Continuance two days earlier.

Also at the hearing, the trial court noted that it had previously enjoined Appellant from spending the Fidelity 401k money and ordered Appellant to provide proof that the money was in the account.  Appellant repeatedly testified that he had moved the money from the Fidelity 401k account into another account, but that the $12,400 was still available to pay Appellee her share.  Appellant, however, did not produce documentation showing the location of the funds.  When specifically asked about the new account, Appellant first refused to give the information to the court, but later stated that he did not have the information with him to give to the court. Defendant was adamant that the $12,400 from the Fidelity 401k account still existed and that he had access to it.

Following the hearing, in an effort to give Appellant another opportunity to comply with the court's equitable distribution Order, the court entered an order directing Appellant to provide documentation about the location of the money from the Fidelity 401k account within ten days.

---

[3] Appellant appeared *pro se* at the hearing.

Appellant failed to comply with the court's January 23, 2015 Order. Consequently, Appellee filed a Motion for Contempt. The court held a hearing on the Motion on June 4, 2015, however Appellant failed to appear. Nevertheless, Appellee testified regarding Appellant's failure to comply with the court's orders. The court scheduled another contempt hearing for July 8, 2015 so that Appellant could defend himself against Appellee's claims that he was in contempt. The court also permitted Appellant to apply for appointment of counsel to represent him at the July 8, 2015 hearing.

On July 8, 2015, Appellant appeared with appointed counsel and testified, contradicting his testimony given at the January 23, 2015 hearing, that he did not have access to the $12,400 from the Fidelity 401k account and that he had spent the money repairing the marital home that had already been transferred to Appellee pursuant to the Master's Report.

The trial court determined that Appellant's testimony that he was unable to pay Appellee the $12,400 was not credible, and found Appellant in contempt. Following the hearing, the court entered an Order sentencing Appellant to a term of incarceration until he paid the $12,400. In the Order, the trial court also set forth conditions of Appellant's "parole" to take effect after he satisfied the purge amount. Those conditions included that Appellant: (1) pay Appellee $600 for a 1997 Dodge Neon; (2) transfer to Appellee a boat and trailer, bearing the costs of the transfer; (3) transfer to Appellee a 2002 Dodge utility truck and its title, and bearing the costs of the

transfer; (4) pay $275 to replace an emergency state-registered blue light on the top of a Hyundai Santa Fe; and (5) pay $150 to Appellee's counsel for preparation of a deed to the marital residence.

On July 27, 2015, Appellant paid Appellee $12,400, and the trial court ordered his release from jail. In the Order releasing Appellant from jail, the trial court stated that Appellant was still subject to compliance with the remaining terms and conditions regarding the distribution contained in its July 8, 2015 Order.

Appellant timely appealed on August 7, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal:

> 1. Whether the court abused its discretion when it found Appellant in contempt of court?
>
> 2. Whether the court erred in finding that Appellant had the present ability to comply with the Divorce Master's Report made a final order of the court?
>
> 3. Whether the court had the authority to place Appellant on parole following the purge of the court's sentence?
>
> 4. Whether Appellant's purge of the court's sentence relieved Appellant from all other conditions of parole as set forth in the court's order of July 8, 2015?

Appellant's Brief at 9.

In his first issue, Appellant challenges the portion of the July 8, 2015 Order finding him in contempt. Appellant argues that, despite the trial court's representations to the contrary, the trial court found him in criminal

contempt and not civil contempt. He avers, therefore, that the trial court erred and abused its discretion in finding him in criminal contempt and in denying him the procedural rights and safeguards owed to him as a criminal defendant. *Id.* at 17-18. He supports this argument by claiming that the appointment of counsel for the contempt proceeding, the denial of an opportunity to purge the contempt prior to incarceration, the Order to pay a fine and the costs of prosecution, and the establishment of conditions of parole are all indicia of criminal contempt. *Id.* at 17. Appellant further argues that the dominant purpose of the contempt proceeding was to punish him for violating the court's Order, not to coerce him into complying with it. *Id.* at 18.

As a prefatory matter, we must determine whether the trial court held Appellant in civil or criminal contempt. The "dominant purpose of the court" guides us in this endeavor. *Commonwealth v. Charlett*, 391 A.2d 1296, 1298 (Pa. 1978). If the trial court's purpose was to "vindicate the dignity and authority of the court and to protect the interest of the general public[,]" the contempt is criminal. *Id.* (citation omitted). However, if the trial court's purpose was to "coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest," then the contempt is civil. *Id.* (citation and quotation omitted).

In its Rule 1925(a) Opinion, the trial court noted that it found Appellant in civil contempt. We agree with the trial court's rationale and conclusion, which it explained as follows:

> While [Appellant's] actions justify holding him in both types of contempt, this [c]ourt's primary purpose in holding [Appellant] in contempt on July 8, 2015, was to coerce him into distributing marital property to [Appellee] in accordance with the terms of the Master's Report.

Trial Ct. Op., 12/15/15, at 7.

Having determined that the trial court held Appellant in civil contempt, we review the trial court's July 8, 2015 Order for a misapplication of the law or clear abuse of discretion. *See MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012). The burden of proof rests with the complaining party to demonstrate that a party is in contempt of a court order. *Id.* To prevail on a contempt claim, the complaining party must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the order that has allegedly been violated; (2) that the contempt was volitional; and (3) that the contemnor acted with wrongful intent. *Id.*

To avoid a finding of contempt, an alleged contemnor may present evidence that he has the present inability to comply with the order. *Childress v. Bogosian*, 12 A.3d 448, 465 (Pa. Super. 2011). If he presents such evidence, before making a finding of contempt, the trial court must be convinced beyond a reasonable doubt from the totality of the evidence presented that the contemnor has the present ability to comply.

*Id.* When reviewing an order of contempt, we place great weight on the sound discretion of the trial judge. *Rhoades v. Pryce*, 874 A.2d 148, 153 (Pa. Super. 2005).

The trial court did not abuse its discretion in determining that Appellant was in contempt of the court's Orders.

The trial court addressed the issue of notice as follows:

> The record shows that [Appellant] had notice of the Orders entered against him. Regarding the Fidelity 401k, [Appellant] acknowledged on the record at the January 23, 2015 hearing that he received [the c]ourt's January 15, 2015 Order requiring him to provide proof that the 401k funds remained intact. [Appellant] even acknowledged the Master's recommendation that [Appellant] pay $12,400 in his January 23, 2015 testimony that "[what we are] dealing with today is the [c]ourt has $12,400 jurisdiction that related back to the Master's Report. . ." Thus it is readily apparent from the [Appellant's] own testimony that he had knowledge of the [c]ourt's Order that he pay [Appellee] $12,400 from the Fidelity 401k prior to the January 23, 2015 hearing.
>
> Any doubt about whether [Appellant] had notice of the fact that he was required to produce documentation regarding the location of the funds from the Fidelity 401k vanished when the [c]ourt gave [Appellant] another opportunity to comply with its Order following the conclusion of the January 23, 2015 hearing. At that time, on the record and in the presence of [Appellant], the [c]ourt gave [Appellant] ten additional days to provide documentation regarding the location of the funds from the Fidelity 401k. The [c]ourt specifically warned [Appellant] that his continued non-compliance could result in contempt. However, [Appellant] once again failed to provide the documentation required by the [c]ourt which led to the June 4, 2015, and July 8, 2015 hearings regarding [Appellant's] contempt. At the July 8, 2015 hearing, [Appellant] again acknowledged that he was under an Order regarding the Fidelity 401k money. As a result, this [c]ourt found that

> [Appellant] had notice of the Orders for which he is alleged to have disobeyed.

Trial Ct. Op. at 8-9 (footnotes omitted).

In concluding that Appellant's contempt was volitional, the trial court relied on Appellant's testimony at the January 23, 2015 hearing. It noted,

> [Appellant] was asked at the January 23, 2015 hearing why he didn't provide documentation regarding the Fidelity 401k, as previously ordered by the [c]ourt. In response, [Appellant] repeatedly began arguing about why he believes the Divorce Master wrongfully decided that the money in the 401k was marital property. Importantly, [Appellant] never indicated that he misunderstood the fact that the Master's Report was adopted as a Final Order of the Court which he was required to obey. Instead [Appellant] merely indicated his disagreement with the decisions of the Divorce Master that were reflected in the [c]ourt's Final Order.
>
> [Appellant's] own testimony from the January 23, 2015 hearing provides the best proof that [Appellant] understood that the [c]ourt adopted the Divorce Master's Report as a Final Order. When [Appellant] was cross-examined about transferring the titles to the Penyon boat and Dodge utility truck, he answered in the following manner:
>
> > Yes, as I stipulated before and according to the Master's Report adopted by this [c]ourt, the Master clearly stipulates that the titles are to be signed by the parties and notarized.
>
> Thus, [Appellant] clearly understood that the [c]ourt had adopted the Master's Report as its own, and that the Court Order must be followed. For this reason, the [c]ourt found that [Appellant's] failure to comply with the [c]ourt's Orders was volitional. [Appellant] understood he was to turn over the money, but he did not want to do so.

*Id.* at 9 (footnotes omitted).

The trial court also found that Appellant acted with wrongful intent in disobeying its orders. It noted that Appellant "purposefully disregarded Court Orders based on his personal belief that the Divorce Master reached an erroneous decision." *Id.* at 10. The court further opined

> [W]hen [Appellant] was cross-examined about the current location of the funds from the Fidelity 401k, he indicated that he would not reveal the location of the money to anyone, including the [c]ourt. . . . Based on . . . the totality of [Appellant's] testimony at the January 23 and July 8 hearings, [Appellant's] actions in the failed exchange of property on September 27, 2014, [Appellant's] failure to turn over the $12,400 to [Appellee] despite several Orders and continuances by this [c]ourt to do so, and the failure of [Appellant] to comply with the Order to provide information about the location of the $12,400 from the Fidelity 401k account, this [c]ourt found that [Appellant] acted with wrongful intent in refusing to comply with this [c]ourt's orders.

*Id.* (footnotes omitted).

We discern no abuse of discretion in the trial court's finding of Appellant's civil contempt. *See Rhoades*, 874 A.2d at 153. Therefore, Appellant is not entitled to relief on this issue.

In his second issue, Appellant challenges the trial court's finding that Appellant had the present ability to comply with the Divorce Master's Report as made final by the trial court's September 30, 2013 Order. In support of this argument, Appellant noted that he "repeatedly and consistently testified as to his disposition of the property at issue. [He] testified that most of the vehicles had been sold and that the proceeds had been used towards marital debt. [He] repeatedly testified that the funds contained in the 401k were

used to remodel the home that was to be turned over to Appellee and to keep said home out of foreclosure. Finally, Appellant repeatedly testified that he was indigent and asked the court numerous times to have counsel appointed to represent him." Appellant's Brief at 22.

Based on the totality of the evidence, the trial court found Appellant's claim that he was unable to comply with the court's Orders not credible. Trial Ct. Op. at 10. The trial court specifically noted the inconsistencies in Appellant's testimony regarding the whereabouts of the property to be transferred and his willingness to transfer it. The trial court emphasized the following:

> At the January 23, 2015, hearing, [Appellant] clearly and repeatedly said that he had the $12,400 from the Fidelity 401k in another account, and he is capable of paying the same to [Appellee]. It was not until the July 8, 2015, hearing, when [Appellant] faced jail time as a possible penalty, that [Appellant] claimed that the money from the Fidelity 401k was all spent years earlier on the marital home.
>
> Assuming, *arguendo*, that even if [Appellant] was not financially capable of complying with this Court's previous Orders, he was perfectly capable of complying with the other aspects of those Orders, such as transferring title and possession of certain automobiles and boats to [Appellee], and providing, at a minimum, documentation regarding the Fidelity 401k account or any other account where [Appellant] had the Fidelity 401k money. [Appellant] did not do so, despite being given multiple opportunities to comply. Instead, [Appellant] has filed motion after motion in an attempt to relitigate the Master's recommendations, to keep the litigation going, and to ultimately serve his desire to strip [Appellee] of her right to her portion of the marital property.

Trial Ct. Op. at 10-11.

We agree with the trial court's conclusion that the totality of the evidence presented at the hearings, particularly the testimony of the parties, indicated that Appellant's failure to comply with the court's Orders was due to Appellant's overwhelming "desire to strip [Appellee] of her right to her portion of the marital property[,]" rather than his inability to comply. Trial Ct. Op. at 11. We also agree that even if Appellant lacked the immediate ability to transfer $12,400 from the Fidelity 401k (or some other account into which he had moved that sum), Appellant did not lack the ability to transfer "title and possession of certain automobiles and boats to [Appellee], and provid[e], at a minimum, documentation regarding the Fidelity 401k account or any other account where [Appellant] had the Fidelity 401k money." *Id.*

Furthermore, to the extent that the trial court based its determination that Appellant had the present ability to comply with the orders on its assessment of the relative credibility of the parties, we defer to the trial court's determination. *Collins v. Collins*, 897 A.2d 466, 471 (Pa. Super. 2006) (on issues of credibility, appellate courts defer to trial courts that had the opportunity to observe proceedings and demeanor of witnesses). Accordingly, this issue fails.

Third, Appellant claims the trial court lacked the authority to place him on parole following the purge of the court's sentence. However, rather than

support this claim of error with an independent argument in his Brief, Appellant merely reiterates the argument he set forth in his first issue, *i.e.*, "[a]s set forth above, the fact that the July 8, 2015 Order referenced parole and subjected Appellant to conditions of parole supports Appellant's contention that he was subjected to criminal contempt rather than civil contempt, and was thus denied the procedural rights and safeguards afforded to criminal defendants." Appellant's Brief at 23.

As discussed, *supra*, we agree with the trial court's determination that the court subjected Appellant to civil, not criminal, contempt. Therefore, this issue on appeal is meritless.

Moreover, we note that the trial court acknowledged in its Rule 1925(a) opinion that it misused the term "parole" in its July 8, 2015 Order. Trial Ct. Op. at 11. The trial court explained that its intent was to "reaffirm and note to [Appellant] that the payment of the $12,400 in order to purge himself of the contempt was not the end of his obligations under the previous Court Orders." *Id.* Rather, the court was "emphasizing that [Appellant] could once again be held in contempt if he did not comply with the other obligations imposed upon him by the [c]ourt's previous Orders." *Id.*

Last, Appellant claims that satisfying the purge condition contained in the July 8, 2015 Order, *i.e.*, paying Appellee $12,400, relieved him of the

obligation to comply with the other provisions of the Order. **See** Appellant's Brief at 23.

Appellant has failed to support this claim with citation to any relevant authority. Accordingly, it is waived. **See** Pa.R.A.P. 2119(a) (waiver results when an appellant fails to properly develop an issue or cite to any authority in support of his/her contentions); **Nemirovsky v. Nemirovsky**, 776 A.2d 988, 994 (Pa. Super. 2001) (issue waived where appellant offered only a cursory argument and failed to cite any legal authority to support his contention.).

For the foregoing reasons, we affirm the trial court's July 8, 2015 Order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016